UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In the Matter of the Arbitration Between )
)
)
BRIAN M. BITTNER, ) Civil Action No. 07 Civ. 07154 (PAC)
)
Petitioner, )
)
v. )
)
RBC CAPITAL MARKETS CORPORATION, )
)
Respondent. )
)
)

**RESPONDENT'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION TO DISMISS THE
<u>PETITION TO VACATE THE ARBITRATION AWARD</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 2

FACTS ........................................................................................................................ 3

ARGUMENT .............................................................................................................. 8

    I.    The FAA Does Not Independently Confer Subject Matter Jurisdiction. ............. 8

    II.    The Petition Does Not Raise a Substantial Federal Question. ............................. 9

    III.    The Petition Does Not Allege that the Panel Acted in Manifest Disregard of Federal Law. ................................................................................................ 11

CONCLUSION ........................................................................................................ 16

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

Ciaramella v. Reader's Digest Association, Inc., 131 F.3d 320 (2d Cir. 1997) ................................................................................................................. 12, 15

D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95 (2d Cir. 2006) ......................... 14

DiRussa v. Dean Witter Reynolds Inc., 121 F.3d 818 (2d Cir. 1997), cert. denied, 522 U.S. 1049 (1998) ..................................................................... 14

Dreyfus Service Corp. v. Gold, No. 02 Civ. 9415 (LAK), 2002 WL 31802347 (S.D.N.Y. Dec. 12, 2002) ........................................................... 9, 11

Duferco International Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383 (2d Cir. 2003) ................................................................................. 13

Fromm v. ING Funds Distributor, LLC, 486 F. Supp. 2d 348 (S.D.N.Y. 2007) ................................................................................................................. 10

Greenberg v. Bear, Stearns & Co., 220 F.3d 22 (2d Cir. 2000), cert. denied, 531 U.S. 1075 (2001) ................................. *passim*

Hakala v. Deutsche Bank, No. 00 Civ. 1335 (RWS), 2000 WL 1425049 (S.D.N.Y. Sept. 26, 2000) .............................................................................. 9, 13

Harry Hoffman Printing, Inc. v. Graphic Communications International Union Local 261, 912 F.2d 608 (2d Cir. 1990) ..................................................... 9

Hostcentric Technologies, Inc. v. Republic Thunderbolt, LLC, No. 04 Civ. 1621 (KMW), 2005 WL 1377853, (S.D.N.Y. Jun. 9, 2005) ............................... 15

Horphag Research Ltd. v. Henkel Corp., 115 F. Supp. 2d 455 (S.D.N.Y. 2000) ................................................................................................................. 15

Moses H. Cohen Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, (1983) ....................................................................................................... 9

Perpetual Securities, Inc. v. Wang, 290 F.3d 132 (2d Cir. 2002) ..................... 11, 12

Porzig v. Dresdner, Kleinwort, Benson, North America LLC, No. 06-cv-1212, -- F.3d --, 2007 WL 2241592 (2d Cir. Aug. 7, 2007) .................................................. 10

Register.Com. Inc. v. Verio, Inc., 356 F.3d 393 (2d Cir. 2004) ........................................... 6

V'Soske v. Barwick , 404 F.2d 495 (2d Cir. 1968) ................................................................ 14

Wallace v. Buttar , 378 F.3d 182 (2d Cir. 2004) ................................................................... 14

Westerbeke Corp. v. Daihatsu Motor Co., Ltd., 304 F.3d 200 (2d Cir. 2002) ..................... 13, 14

Winston v. Mediafare Entertainment, Corp., 777 F.2d 78 (2d Cir. 1986) ........................... 13, 15

Wise v. Marriott Int'l, Inc., No. 06 Civ. 11439 (LAP), 2007 WL 2200704 (S.D.N.Y. Jul. 30, 2007) ........................................................................................................ 11

## FEDERAL STATUTES

9 U.S.C. §10 ................................................................................................................... 8, 10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In the Matter of the Arbitration Between<br><br>BRIAN M. BITTNER,<br><br>   Petitioner,<br><br>   v.<br><br>RBC CAPITAL MARKETS CORPORATION,<br><br>   Respondent. | Civil Action No. 07 Civ. 07154 (PAC) |

### RESPONDENT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE PETITION TO VACATE THE ARBITRATION AWARD

Respondent RBC Capital Markets Corporation ("RBC") respectfully submits this memorandum of law in support of its motion to dismiss Brian M. Bittner's petition to vacate the NASD's arbitration award, dated May 17, 2007 (the "Award"), pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim.[1]

---

[1] Pursuant to this Court's Individual Practices, RBC requested a pre-motion conference on August 17, 2007. The parties appeared before Judge Crotty on August 30, 2007. At the pre-motion conference, the Court requested that RBC provide petitioner with evidence that RBC is a New York corporation and granted RBC leave to move to dismiss the petition if Bittner did not withdraw or amend his petition by September 10, 2007. Hours after the conference, RBC provided petitioner with its New York State Certificate of Good Standing evidencing that RBC is incorporated in New York. Bittner has not withdrawn or amended his petition.

## PRELIMINARY STATEMENT

For more than two years, Bittner has owed RBC a substantial sum of money. After RBC commenced an arbitration against him, Bittner and RBC agreed to compromise his debt in a written settlement agreement that both he and his lawyer signed. About a month later, however, Bittner developed seller's remorse and tried to repudiate his agreement. The arbitration panel nevertheless found that he had knowingly and voluntarily entered into a binding settlement agreement and therefore issued an award incorporating its terms.

Bittner has now brought a petition to vacate. RBC would like nothing more than for the Court to address the merits of this dispute, because the only possible conclusion that could be reached is confirmation of the award. Indeed, RBC currently cannot levy any of Bittner's assets to enforce his debt because a party can only execute upon a judgment issued by a court, not an arbitration award issued by a panel. Unfortunately for RBC, the Court will not have the chance to address the merits because it lacks subject matter jurisdiction over this action. Bittner's petition does not identify any basis for jurisdiction, and it is black letter law that the Federal Arbitration Act does not independently confer subject matter jurisdiction. Accordingly, the case must be dismissed, and RBC must await its day in state court before it can finally collect on Bittner's long-overdue debt.

## FACTS

RBC hired Bittner as a middle markets salesman on January 31, 2003. (DeSena Aff. Ex. B p. 2.) As a recruitment inducement, RBC provided him with a forgivable loan, secured by a promissory note, the unforgiven portion of which became immediately payable in full when he quit his employment on July 23, 2005. (Id. p. 3.)

On October 26, 2005, RBC commenced arbitration number 05-05482 with NASD Dispute Resolution, Inc. to recover the amount that Bittner still owed. (Id. Ex. B.) On January 11, 2006, Bittner – represented by the law firm of Alonso, Andalkar & Kahn, P.C. – filed a Statement of Answer, in which he asserted several defenses and counterclaims. (Id. Ex. C.) The panel scheduled a hearing for December 19, 2006. (Id. Ex. D.) Days before the hearing was to begin, Bittner sought an adjournment and the panel re-scheduled the hearing for February 21, 2007. (Id. Ex. E.)

On the morning of February 21, RBC and Bittner – still represented by two lawyers from the Alonso firm – agreed to settle their dispute. Rather than pay the entire amount of $492,410.59 plus interest that he owed RBC under the promissory note, Bittner agreed to pay the reduced sum of $390,000.00, without interest, spread over a four-year period. In other words, Bittner and his counsel negotiated a discount of more than 20 percent, elimination of interest and a lengthy payment schedule that would give him additional time to pay his debt.[2] The parties documented their agreement in a handwritten contract (the "Settlement Agreement") that is attached to the Award. (Id. Ex.

F).  Bittner personally signed the Settlement Agreement, as did one of his lawyers, Catania Facher, Esq.

The Settlement Agreement states, in its entirety, as follows:

---

RBC Capital Markets Corporation, Claimant

   v.

Brian Bittner

---

The parties agree to settle this matter as follows; subject to more formal documentation:

(1)  Respondent will pay to claimant the sum of $390,000.00 as follows:

   (a) $75,000 no later than thirty (30) days after the executor of this stipulation;

   (b) $75,000 no later than sixty days after the execution of this stipulation; and

   (c) $240,000 in forty-eight (48) equal payments of $5,000.00 Dollars.

(2)  In the event of a default in any payment, and the confirmation of such default for a period of ten (10) days after written notice to the Respondent, the Claimant shall be entitled to enter judgment for the full balance of the promissory note, to wit, $492,410.59 less any payments theretofore made in payment of any sums due hereunder.

(3)  The Claimant and Respondent shall execute a general releases of each other, which release shall be held in escrow by Respondent's and Claimant's counsel with each holding the copy of the other pending full payment of the sums due hereunder.

(4)  Notices shall be sent to the parties and their respective counsel by fax and/or overnight mail and by certified mail, at addresser/number to be designated by the parties in a more formal stipulation.

(5)  The Claimant shall issue Form 1099's for the amount by which the claim is reduced, to wit, $102,410.59, shall be divided equally over 4 years so that Respondent receives a Form 1099 in an amount no greater than $ 25,602.65 in any year.

02/21/07 _____/s/_____          _____/s/_____
        Ralph DeSena                                      Brian Bittner

---

[2]  Now that Bittner has defaulted, however, the full amount of the debt has been reinstated according to the terms of paragraph 2 of the Settlement Agreement.

For RBC Capital Markets Corporation  
And As Attorney for Claimant            _____/s/_____  
                                                    Catania Facher  
                                        Attorney For Brian Bittner

The Settlement Agreement is a binding contract that settled all claims, defenses and counterclaims alleged in the arbitration. If it were anything but, the parties would have proceeded with the presentation of their evidence at the hearing that morning. That is why the Settlement Agreement contains the caption of the arbitration, states that "the parties agree to settle this matter" (opening paragraph), establishes a payment schedule (paragraph 1), provides in the event of default for the entry of a confession of judgment of the original amount of the debt (paragraph 2), discusses the execution of general releases (paragraph 3), describes the required method of notice (paragraph 4), specifies the tax treatment of the forgiven amount (paragraph 5), and is signed by both the parties and their counsel. The Settlement Agreement on its face contains all of the elements – offer, acceptance, consideration, mutual consent and an intention to be bound – necessary for the creation of an enforceable contract under New York law.[3] It is not, as Bittner suggests, a non-binding "memorandum." (Petition ¶ 18.)

It also is obvious from the face of the Settlement Agreement, and RBC does not dispute, that the parties contemplated eventually entering into a more formal, typewritten agreement that would supersede the handwritten Settlement Agreement. That is why the Settlement Agreement refers in the opening paragraph to "more formal documentation" and in paragraph 4 to "a more formal stipulation." Accordingly, immediately following the execution of the Settlement Agreement, counsel began exchanging drafts of a

---

[3] See, e.g., Register.Com. Inc. v. Verio, Inc., 356 F.3d 393, 427 (2d Cir. 2004) (New York law).

typewritten agreement. (Petition Ex. A.) The parties contemplated that this typewritten document, when executed, would supersede the handwritten Settlement Agreement. (Id. at ¶ 19.) But nothing in the Settlement Agreement or in the parties' subsequent statements or course of conduct (prior to March 23) ever suggested that either side did not feel bound by the Settlement Agreement in the meantime.

The parties were close to signing the typewritten agreement when Bittner fired his attorneys. On March 23, 2007, the Alonso firm withdrew as counsel of record in the NASD arbitration. (DeSena Aff. Ex. G). On April 5, RBC filed a motion with the panel to enforce the Settlement Agreement, in which RBC stated its position in no uncertain terms "that the settlement papers signed on February 21, 2007 by respondent and his then-counsel are enforceable on their terms." (Petition Ex. H.) Bittner, represented by his current counsel, opposed the motion on April 12 and sought an adjournment and re-scheduling of the hearing. (Id. Ex. I.) Notably, Bittner's opposition *did not cite a single legal authority* in his brief. It certainly cannot be said that Bittner presented an issue of federal law that the panel elected to disregard. A non-recorded telephonic argument was held on May 7. On the following day, the panel issued an Order granting RBC's motion. (Id. Ex. D.) On May 17, the panel issued the Award that is the subject of this motion to vacate. (DeSena Aff. Ex. H).[4]

---

[4] The version of the Award attached as Exhibit E to the petition to vacate is missing the first page.

On August 3, 2007, Bittner purported to serve RBC with his petition to vacate, even though he had not at that time filed the petition with the Clerk of Court. See Federal Rule of Civil Procedure 3 ("A civil action is commenced by filing a complaint with the court."). Because the petition had not yet been filed, it did not contain a civil action number. According to the docket sheet in this action, Bittner subsequently commenced this action on August 8, although he never bothered to re-serve RBC with a petition containing the civil action number. Notably, nowhere in the petition does Bittner even attempt to articulate a basis for this Court's exercise of subject matter jurisdiction.

## ARGUMENT

### I. The FAA Does Not Independently Confer Subject Matter Jurisdiction.

Bittner filed his petition under § 10(a) of the Federal Arbitration Act ("FAA"), which authorizes "the United States court in and for the district wherein the award was made" to "make an order vacating the award" in four circumstances:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(1)-(4).

It is well-settled that § 10 of the FAA does not independently confer subject matter jurisdiction on a federal court. Moses H. Cohen Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 26 n.32 (1983); Greenberg v. Bear, Stearns & Co., 220 F. 3d 22, 25 (2d Cir. 2000), cert. denied, 531 U.S. 1075 (2001); Harry Hoffman Printing, Inc. v. Graphic Communications Int'l Union Local 261, 912 F. 2d 608, 611 (2d Cir. 1990). Before this Court can entertain Bittner's petition to vacate, he therefore must allege an independent basis of jurisdiction separate from the FAA, such as diversity jurisdiction[5] or the existence of a substantial federal question. Id. Bittner's petition does not contain any jurisdictional allegations whatsoever. Compare Dreyfus Service Corp. v. Gold, No. 02 Civ. 9415 (LAK), 2002 WL 31802347, at *1 (S.D.N.Y. Dec. 12, 2002) (dismissing petition to vacate for lack of subject matter jurisdiction where "[t]he petition contains no jurisdiction allegations…"); Hakala v. Deutsche Bank, No. 00 Civ. 1335 (RWS), 2000 WL 1425049, at * 1 (S.D.N.Y. Sept. 26, 2000) (dismissing for lack of subject matter jurisdiction where "Hakala's papers contain no jurisdictional allegations").

## II.     The Petition Does Not Raise a Substantial Federal Question.

When determining whether a petition to vacate under FAA § 10 raises a substantial federal question, courts analyze the grounds on which the petitioner has challenged the award. Greenberg, 220 F. 3d at 26. If the petition to vacate concerns the

---

[5]     Bittner presumably is a citizen of the State of New York. (Petition ¶ 1.) RBC, the only entity named as a party to the arbitration, is a New York corporation with its principal place of business in New York. (DeSena Aff. ¶ 3, Ex. A.) Therefore, diversity jurisdiction does not exist.

arbitration process itself and contends that the process was improper or unfair because of misdeeds of the arbitrators or failure to consider pertinent and material evidence, then a substantial federal question is *not* presented and subject matter jurisdiction does *not* exist. Id. at 27.

Here, nearly all of the grounds on which Bittner argues the Award should be vacated are based on allegations related to the arbitration process itself:

- "[T]he Panel was guilty of misconduct in refusing to hear evidence pertinent and material to the controversy in violation of 9 U.S.C. Sec. 10(a)(3) and (5) by refusing to resolve on the merits Petitioner's presented claims to the Panel." (Petition ¶ 32.)[6]

- "[T]he Panel engaged in misconduct by basing its decisions on a legally superseded and non-existent memorandum." (Id. ¶ 33.)

- "[T]he Panel denied Petitioner fundamental fairness and acted arbitrarily and capriciously, by enforcing the February 21, 2007 handwritten memorandum 'as the final resolution of this matter'". (Id. ¶ 34.)[7]

- "[T]he Panel engaged in misconduct by failing to consider pertinent and material evidence, to wit, Petitioner's defenses and counterclaim." (Id. ¶ 35.)

- "[T]he Panel exceeded its powers, acted without jurisdiction and denied Petitioner fundamental fairness." (Id. ¶ 37.)

Each of these purported grounds to vacate the Award fails to raise a federal question. See, e.g., Greenberg, 220 F.3d at 27 ("'fraud, corruption, undue means, evident

---

[6]   The FAA does not even contain a § 10(a)(5) and "refusing to resolve a claim on the merits" is nowhere listed in § 10(a) as a basis for vacatur.

[7]   "Arbitrary and capricious" is not a proper basis for vacatur of an arbitration award in this Circuit. Porzig v. Dresdner, Kleinwort, Benson, North America LLC, No. 06-cv-1212, -- F.3d --, 2007 WL 2241592, at *4 (2d Cir. Aug. 7, 2007) (declining to recognize "arbitrary and capricious" grounds); see also Fromm v. ING Funds Distributor, LLC, 486 F. Supp. 2d 348, 352 (S.D.N.Y. 2007).

10

partiality, and failure to consider pertinent and material evidence'" do not raise a federal question); Wise v. Marriott Int'l, Inc., No. 06 Civ. 11439 (LAP), 2007 WL 2200704, at *3 (S.D.N.Y. Jul. 30, 2007) (allegation that arbitrators' failure to hold a hearing exceeded their power did not raise a federal question); Dreyfus, 2002 WL 31802347, at *1 (no subject matter jurisdiction when sole ground asserted for vacatur was alleged violation by one of the arbitrators of the NASD Code of Arbitration Procedure); Perpetual Secs. Inc. v. Wang, No. 99 Civ. 3335 (SHS), 1999 WL 619640, at *2 (S.D.N.Y. Aug. 16, 1999) (no federal question when grounds to vacate award asserted only that the arbitrators exceeded their authority, committed various acts of misconduct, manifestly disregarded the law of respondeat superior and erroneously calculated damages).

### III. The Petition Does Not Allege that the Panel Acted in Manifest Disregard of Federal Law.

Besides the statutory FAA grounds, this Circuit recognizes an additional (although extremely limited) judicially-created basis for vacatur of an arbitration award: manifest disregard of law. Where a "petitioner complains principally and in good faith that the award was rendered in manifest disregard of federal law, a substantial federal question is presented and the federal courts have jurisdiction to entertain the petition." Greenberg, 220 F.3d at 27.

In this case, one of the six grounds that Bittner asserts for vacatur is:

- "[T]he Panel acted in manifest disregard of the law by relying on a superseded extinguished February 21, 2007 memorandum, the legal deficiency of which was pointed out to the Panel." (Petition ¶ 36.)

11

Bittner's allegation falls short of creating an independent basis for subject matter jurisdiction for three reasons.

First, for subject matter jurisdiction to exist, manifest disregard of federal law must be the petition's "principal[]" complaint. Greenberg, 220 F.3d at 27. Here, as noted previously, five of the six grounds asserted for vacatur involve alleged improprieties in the arbitration process itself. Only one purported ground is based on manifest disregard of law. It can hardly be said that manifest disregard is the petition's principal complaint.

Second, the manifest-disregard-of-law doctrine can be the basis of subject matter jurisdiction only when a petition to vacate asserts grounds that plainly require the resolution of a *uniquely federal* issue.[8] Id. at 28; Perpetual Securities, Inc. v. Wang, 290 F.3d 132, 140 (2d Cir. 2002) ("there is no allegation by Perpetual that *respondeat superior* is an issue of federal law that needs to be decided by a federal court"). If a petitioner is complaining only about an arbitrator's disregard of *state* law, obviously no federal question is presented and subject matter jurisdiction does not exist. As recognized in the cases cited by petitioner, whether parties reached an enforceable settlement agreement is not an issue unique to federal law. Ciaramella v. Reader's Digest Ass'n, Inc., 131 F. 3d 320, 322 (2d Cir. 1997) (finding no material difference between

---

[8] That the arbitration was commenced under the auspices of the NASD and conceivably could have touched upon the federal securities laws is of no moment. Greenberg, 220 F.3d at 26 ("the fact that the arbitration concerns issues of federal law does not, standing alone, confer subject matter jurisdiction on a federal district court to review the arbitral award."). In any event, with the exception of a frivolous Title VII claim that Bittner initially brought but later withdrew, the parties asserted only state law claims in the arbitration.

state and federal common law for determining whether the parties reached a settlement of claims); Winston v. Mediafare Entertainment, Corp., 777 F.2d 78, 80 (2d Cir. 1986) (applying New York law to dispute over enforceability of settlement agreement).[9]

Third, the petition does not come close to satisfying the "manifest disregard" standard. A court's "standard of review under this judicially created doctrine is 'severely limited.' To vacate the award, we must find 'something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law.'" Westerbeke Corp. v. Daihatsu Motor Co., Ltd., 304 F.3d 200, 208 (2d Cir. 2002) (citations omitted). "[M]anifest disregard is … a doctrine of last resort – its use is limited only to those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent, but where none of the provisions of the FAA apply." Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 389 (2d Cir. 2003). In fact, as of a few years ago, the Second Circuit had vacated part or all of an arbitral award for manifest disregard in only four out of at least 48 cases where the standard had been applied. Id.

---

[9] In fact, the petition expressly argues the application of state – not federal – law: "[b]y ruling that the February 21 memorandum is the 'final solution', the Panel arbitrarily deprived Petitioner of the opportunity to provide evidence to show that either under Minnesota law or New York law claims of fraud and breach of contract were engaged in by RBC, as Petitioner alleges, which Panel could not lawfully do… New York law as well permits Petitioner to prevail on proving his fraud and breach of contract defenses to RBC's claim on the note." (Petitioner's Memo of Law at 8-9.) Compare Hakala, 2000 WL 1425049, at * 1 (dismissing for lack of subject matter jurisdiction when petitioner expressly disavowed federal law as a basis for his claims).

13

The two-prong test for ascertaining whether an arbitration panel has manifestly disregarded federal law is that: (1) the panel knew of a governing federal legal principle yet refused to apply it or ignored it altogether, and (2) the federal law ignored by the panel was well defined, explicit, and clearly applicable to the case. D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 111 (2d Cir. 2006); Wallace v. Buttar, 378 F.3d 182, 190 (2d Cir. 2004); Greenberg, 220 F.3d at 27. Both prongs must be met before a court may find that a panel has manifestly disregarded federal law. Westerbeke Corp., 304 F.3d at 208.

Bittner's petition falls woefully short of demonstrating that the panel manifestly disregarded federal law. Bittner's opposition to RBC's motion to enforce the Settlement Agreement *did not contain a single legal citation.* By definition, the panel cannot have ignored federal law in issuing the Award because Bittner did not present the arbitrators with any federal law to disregard. DiRussa v. Dean Witter Reynolds Inc., 121 F.3d 818, 823 (2d Cir. 1997) ("In view of DiRussa's failure to inform the arbitrators of the relevant legal standard, we are hard-pressed to infer that they consciously disregarded the ADEA's fee provisions"), cert. denied, 522 U.S. 1049 (1998).

Moreover, the panel, although not presented with any law, nevertheless reached the correct result. Courts consistently have held that a preliminary agreement executed by both parties, like the Settlement Agreement here, which sets forth all the material terms of the settlement is binding despite the parties' intention to enter into subsequently a more formal agreement. See, e.g., V'Soske v. Barwick, 404 F.2d 495, 496 (2d Cir.

1968) (exchange of correspondence created binding contract even though parties contemplated documenting their agreement in a more formal subsequent contract); Hostcentric Technologies, Inc. v. Republic Thunderbolt, LLC, No. 04 Civ. 1621 (KMW), 2005 WL 1377853, at *6 (S.D.N.Y. Jun. 9, 2005) (e-mail exchange created binding agreement even though parties anticipated a subsequent, formal, executed stipulation and settlement agreement).[10]

Bittner explicitly relies in his petition on state law. He did not present any federal law to the panel. Not only did the panel not ignore well-defined, explicit and clearly applicable federal law, but it correctly applied the law in enforcing the Settlement Agreement. In short, the petition does not allege manifest disregard of federal law.

---

[10] The cases cited by Bittner are clearly distinguishable. Each addresses a factual scenario in which the parties made clear, in writing, their intent not to be bound by the terms of a preliminary agreement. Ciarmella, 131 F.3d at 324 (draft settlement agreement stated "This Settlement Agreement and General Release shall not become effective until it is signed by [the parties]"); Horphag Research Ltd. v. Henkel Corp., 115 F. Supp. 2d 455, 457 (S.D.N.Y. 2000) (agreement stated "subject to the signing of a full and definitive settlement agreement," that a more "definitive agreement" was still to be "worked out", and made no reference to the termination of the litigation); Winston, 777 F.2d at 81 (parties' correspondence referred to "the proposed agreement" and "subject to consummation of the proposed settlement" and promised to hold payment "in escrow pending execution by my client and delivery to you of two fully executed copies of the agreement.").

15

## CONCLUSION

For the foregoing reasons, Brian M. Bittner's petition to vacate the Award must be dismissed.[11]

Dated: September 10, 2007       Respectfully submitted,

RBC CAPITAL MARKETS CORPORATION

By *Ralph DeSena*
Ralph DeSena (RD-7565)
Vice President & Senior Counsel
Leslie Sobel (LS-5623)
Senior Counsel
RBC Capital Markets Corporation
One Liberty Plaza, 5th Floor
165 Broadway
New York, NY 10006-1404
Tel: 212-428-6203
Fax: 212-858-7455
ralph.desena@rbccm.com

---

[11] Should the Court disagree that it lacks subject matter jurisdiction, RBC respectfully requests the opportunity to brief the merits and file a counter-petition to confirm the Award pursuant to 9 U.S.C. § 9.