UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In the Matter of the Arbitration Between )
)
BRIAN M. BITTNER, )        Civil Action No. 07 Civ. 07154 (PAC)
)
        Petitioner, )
)
        v. )
)
RBC CAPITAL MARKETS CORPORATION, )
)
        Respondent. )
)

**AFFIRMATION OF RALPH DESENA IN SUPPORT
OF RESPONDENT'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION TO DISMISS THE
<u>PETITION TO VACATE THE ARBITRATION AWARD</u>**

State of New York )
) ss.:
County of New York )

RALPH DESENA, an attorney duly admitted to practice before this Court, affirms under penalty of perjury, as follows:

1.     I was admitted to the bar of the State of New York on June 28, 1995. I was admitted to practice before the United States District Court for the Southern District of New York on December 23, 1997.

2.     I am a Vice President and Senior Counsel with RBC Capital Markets Corporation ("RBC"). I appeared as counsel of record to RBC in the arbitration before NASD Dispute Resolution, Inc. against petitioner Brian M. Bittner ("Bittner"). As such, I am fully familiar with the matters stated herein. I submit

this affirmation in support of RBC's memorandum of law in opposition to the petition to vacate the arbitration award, dated May 17, 2007 ("Award").

3.    RBC is incorporated in the State of New York. RBC has its principal place of business in the State of New York. Attached hereto as Exhibit A is a true and correct copy of the New York State Certificate of Good Stating for RBC Capital Markets Corporation.

4.    Attached hereto are true and correct copies of the following additional documents:

- Exhibit B: RBC's Statement of Claim filed on or about October 26, 2005.

- Exhibit C: Bittner's Statement of Answer filed on or about January 11, 2006.

- Exhibit D: the scheduling order, setting the hearing date for December 19, 2006.

- Exhibit E: the panel's Order granting Bittner's motion to adjourn the hearing and re-scheduling the hearing for February 21, 2007.

- Exhibit F: the handwritten agreement, dated February 21, 2007, between RBC and Bittner settling all claims, counterclaims and defenses asserted in the arbitration (the "Settlement Agreement").

- Exhibit G: notice of withdrawal by Alonso, Andalkar & Kahn, P.C. as counsel of record to Bittner, dated March 23, 2007.

- Exhibit H: the Award, dated May 17, 2007, incorporating the Settlement Agreement.

Dated:    New York, New York
          September 10, 2007

_____
          Ralph DeSena

# Exhibit A

# State of New York
# Department of State } ss:

I hereby certify, that the Certificate of Incorporation of RBC CAPITAL MARKETS CORPORATION was filed on 04/16/1929, under the name of THE DOMINION SECURITIES CORPORATION, fixing the duration as perpetual, and that a diligent examination has been made of the Corporate index for documents filed with this Department for a certificate, order, or record of a dissolution, and upon such examination, no such certificate, order or record has been found, and that so far as indicated by the records of this Department, such corporation is an existing corporation.

A Certificate of Amendment THE DOMINION SECURITIES CORPORATION, changing its name to DOMINION SECURITIES HARRIS & PARTNERS INC., was filed 10/01/1973.

A Certificate of Amendment DOMINION SECURITIES HARRIS & PARTNERS INC., changing its name to DOMINION SECURITIES INC., was filed 02/01/1977.

A Certificate of Amendment DOMINION SECURITIES INC., changing its name to DOMINION SECURITIES AMES INC., was filed 07/31/1981.

A Certificate of Amendment DOMINION SECURITIES AMES INC., changing its name to DOMINION SECURITIES PITFIELD INC., was filed 06/01/1984.

A Certificate of Amendment DOMINION SECURITIES PITFIELD INC., changing its name to DOMINION SECURITIES CORPORATION, was filed 01/12/1987.

A Certificate of Amendment DOMINION SECURITIES CORPORATION, changing its name to RBC DOMINION SECURITIES CORPORATION, was filed 03/31/1988.

A Certificate of Amendment RBC DOMINION SECURITIES CORPORATION, changing its name to RBC CAPITAL MARKETS CORPORATION, was filed 02/06/2004.

The Biennial Statement is past due.



***

*Witness my hand and the official seal of the Department of State at the City of Albany, this 29th day of August two thousand and seven.*

Daniel Shapiro
Special Deputy Secretary of State

200708300270 * 30

# Exhibit B

**BEFORE NASD DISPUTE RESOLUTION, INC.**

In the Matter of the Arbitration Between:

RBC CAPITAL MARKETS CORPORATION

               Claimant,

and

BRIAN M. BITTNER,

               Respondent.

NASD No. 05-05482

**STATEMENT OF CLAIM**

## I.    <u>INTRODUCTION</u>

This is an action by RBC Capital Markets Corporation ("RBCCM" or the "Firm") pursuant to NASD Rule 10201 of the Code of Arbitration Procedure for repayment of a promissory note from its former employee, Brian M. Bittner, CRD #2359265 ("Bittner"). Pursuant to Rule 10202(b)(2), RBCCM requests the appointment of three non-public arbitrators to resolve this dispute.

As is customary within the financial services industry, in order to help an employee transition to a new firm and as a recruitment inducement, the employee often receives a loan secured by a promissory note. The loan is generally immediately due and payable in full if the employee leaves for any reason prior to the note's maturity date. Bittner received such a recruitment loan from RBCCM, abruptly quit his job, and yet refuses to repay the balance of the loan. RBCCM seeks an award from the NASD for the outstanding balance of the promissory note, interest, costs and reasonable attorneys' fees incurred in the collection of this debt.

## II.    STATEMENT OF FACTS

Bittner began his career with RBC Financial Group as a Financial Consultant for RBC Dain Rauscher Inc. ("RBC Dain").[1]  On or about January 31, 2003, Bittner entered into a Promissory Note (Exhibit 1) and an Employment Agreement (Exhibit 2; and collectively with Exhibit 1, the "Agreements") with RBC Dain.   RBC Dain loaned Bittner $685,132 in consideration for, among other things, Bittner's execution of the Promissory Note.   Bittner agreed to repay the principal amount of the loan, plus interest at the rate of 3.38% per annum. Under the terms of the Agreements, so long as Bittner remained an employee, RBC Dain would forgive 1/84th of the principal and accrued interest on the last business day of each month, beginning on March 28, 2003.  If Bittner's employment with RBC Dain ceased for any reason whatsoever, Bittner was obligated to repay immediately the unforgiven balance of the principal sum of the Promissory Note plus accrued interest.

On or about October 31, 2004, Bittner ended his employment with RBC Dain to become a Salesperson in the Middle Markets Group of RBC Capital Markets Corporation, the corporate and investment-banking arm of RBC Financial Group.   In connection with that move, Bittner executed a new Employment Agreement (Exhibit 3) providing that the Promissory Note was assigned to RBCCM and that all terms and conditions would remain in effect and continue to apply.  The new employment agreement reiterated that if Bittner ceased to be employed by

---

[1]    Royal Bank of Canada uses the initials RBC as a prefix for its businesses and operating subsidiaries, which operate under the master brand name of RBC Financial Group.  RBC Dain Rauscher Inc., a subsidiary of Royal Bank of Canada, is one of the nation's largest full-service broker-dealers with more than 5,000 employees serving individual investors and businesses through 143 branch offices in 40 states.  RBC Capital Markets Corporation, another Royal Bank of Canada subsidiary, is an international corporate and investment bank offering customized products and services to institutions, corporations, governments and high net worth clients around the world.

RBCCM for any reason whatsoever, the unforgiven balance of the Promissory Note, plus interest, would be immediately due and payable on the date of his termination.

On June 10, 2005, Bittner abruptly resigned from RBCCM, effective immediately (Exhibit 4). The unforgiven portion of the Promissory Note became immediately due and payable on that date. On June 23, 2005, RBCCM made a demand upon Bittner for payment of the outstanding principal $464,911.59, plus accrued interest (Exhibit 5). Bittner denied that he owed any money to RBCCM in connection with the Promissory Note and refused to pay his debt. Bittner has made no payment to date and remains in default as of the filing of this Statement of Claim.

Interest is accumulating on Bittner's debt at a rate of 3.38% per annum (or $1,309.50 per month) since his resignation. The Promissory Note also provides that Bittner is responsible for all of RBCCM's costs of collection of the Promissory Note, including reasonable attorneys' fees.

Based on Bittner's response thus far, RBCCM anticipates that Bittner will assert a counterclaim, alleging wrongful activity during his employment. The counterclaim that RBCCM anticipates Bittner may assert does not rise to an actionable cause of action, however, nor does it affect Bittner's obligation under the Promissory Note. Two of the contracts signed by Bittner provide that if his employment with RBCCM ceases "for any reason, the unpaid balance of the principal sum, plus accrued interest, shall be due and payable as of the date of termination" (emphasis added). The other agreement likewise provides that in the event of Bittner's termination of his employment "for any reason whatsoever", he will immediately repay "that portion of the Promissory Note which has not been forgiven on the date of such termination" (emphasis added). Bittner has not immediately repaid his debt to RBCCM, as he is contractually required to do, and the panel therefore should enter an award against him.

### III.     RELIEF REQUESTED

WHEREFORE, RBC Capital Markets Corporation requests that judgment be entered in its favor as follows:

1.     Ordering Bittner to pay the principal sum of $464,911.59, plus interest at the rate of 3.38% per annum ($1,309.50 per month) from June 10, 2005 through the date of the panel's award;

2.     Ordering Bittner to pay all of RBCCM's costs and expenses of this proceeding, including reasonable attorneys' fees and NASD fees, and;

3.     Awarding any further relief as the panel deems fair and just.


Dated: October 26, 2005                    Respectfully submitted,

                                           **RBC CAPITAL MARKETS CORPORATION**

                                           By _____
                                              Ralph DeSena, Esq.
                                              Vice President & Senior Counsel
                                              RBC Capital Markets Corporation
                                              One Liberty Plaza, 5th Floor
                                              165 Broadway
                                              New York, NY  10006-1404
                                              Tel:  212-428-6203
                                              Fax:  212-858-7455
                                              ralph.desena@rbccm.com

# Statement of Claim
# Exhibit 1



RBC
Dain Rauscher

## PROMISSORY NOTE

$685,132                                                                 January 31, 2003

1.  FOR VALUE RECEIVED, the undersigned promises to pay to the order of RBC Dain Rauscher Inc. ("RBC Dain") the principal sum of $685,132 plus interest at the rate of 3.38 percent (3.38%) per annum on the balance remaining from time to time unpaid. For 84 months, beginning in March 28, 2003, on the last business day of each month, 1/84th of the principal amount shall be due and payable in Minneapolis, Minnesota. Accrued interest shall be due and payable at the time each such installment is paid.

2.  If the undersigned's employment by RBC Dain is terminated for any reason, the unpaid balance of the principal sum, plus accrued interest, shall be due and payable as of the date of the termination of employment.

3.  All or any portion of unpaid principal and accrued interest may be prepaid at any time without premium or fee.

4.  The unpaid principal balance of this Note, together with all interest unpaid but accrued thereon, shall, at the option of the holder hereof, become immediately due and payable in the event the undersigned shall default in payment of any installment when due. No delay or omission on the part of the holder hereof in exercising any right or option given to such holder shall impair such right or option, or be considered as a waiver thereof or a waiver or acquiescence in any default hereunder.

5.  The undersigned hereby waives demand, presentment, protest and notice of dishonor, and agrees in case of any default (whether or not suit is brought) to pay all costs of collection, including reasonable attorneys' fees.

6.  The undersigned understands and agrees that in the event of default in any payment due hereunder, RBC Dain shall have the right, without notice, to withhold from any and all amounts payable by it to the undersigned, or held by it for the benefit of the undersigned, as compensation or otherwise, the amount of any payment or payments due hereunder, and to apply such withheld amounts to the indebtedness hereunder.

7.  This note shall be subject to, governed by and construed under the laws of the State of Minnesota.

8.  If any provision of this Note should be held invalid or unenforceable for any reason, the remainder of this agreement shall not be affected thereby.

9.  This Note contains the entire agreement between the parties relating to payments by the undersigned to RBC Dain and cannot be varied, altered or amended, except by a written agreement executed by both parties.

Brian M. Bittner

2/3/03
Date



**RBC Dain Rauscher**

## Employment Agreement

January 31, 2003

THIS AGREEMENT is made and entered into on and as of the date written below between the below-named employee (hereinafter "Employee") and RBC Dain Rauscher Inc., a Minnesota corporation with its principal place of business at Dain Rauscher Plaza, 60 South Sixth Street, Minneapolis, MN 55402-4422 (hereinafter "RBC Dain").

WHEREAS, Employee desires to enter into the employment of RBC Dain as its Financial Consultant for the compensation and on the terms provided herein; and

WHEREAS, RBC Dain desires to employ Employee for the term herein on the terms and conditions stated below.

NOW, THEREFORE, in consideration of their mutual agreements, RBC Dain and Employee agree as follows:

1.  RBC Dain agrees to employ Employee, and Employee agrees to serve RBC Dain as a Financial Consultant. Nothing herein is a promise of employment for a fixed term. Employee may resign, or RBC Dain may terminate the employment, at any time for any reason. Any compensation is contingent on Employee's continued employment with RBC Dain.

2.  As a major inducement for the employment of Employee by RBC Dain, Employee agrees and/or warrants and represents:

    a.  that his/her total commissions, fees, etc., for the twelve month period immediately preceding his/her employment with RBC Dain was $1,522,517, which will be defined as the "Base Commission Amount" for this agreement;

    b.  that his/her total assets under management ("AUM") in the month immediately preceding his/her employment with RBC Dain was $5,951,504, which will be defined as the "Base AUM" for this agreement;

    c.  that he/she will keep confidential RBC Dain's business methods and procedures and its customer account records, posting sheets, cross references, and monthly statements (all of which are hereinafter referred to collectively as the "Records"), and will not copy or reproduce any of those things, nor use or allow others to use any of those things, except for the benefit of RBC Dain and in furtherance of this Employment Agreement;

    d.  that he/she is fully registered and/or licensed with all applicable regulatory authorities as a registered representative, and has disclosed in writing to RBC Dain all past or present circumstances that could have an adverse effect upon the status of such licenses and/or registrations, or hinder prompt and effective transfer of such licenses and/or registrations;

    e.  that he/she will devote all of his/her productive efforts for the benefit of RBC Dain, devoting "full-time" service to RBC Dain within the meaning of applicable NYSE regulations, shall be and remain loyal to RBC Dain during the term of his/her employment, and shall not, directly or indirectly, solicit or sell securities except on behalf of RBC Dain;

f.    that he/she will conduct all business affairs while in the employment of RBC Dain in accordance with the spirit and full compliance of all securities rules and regulations, as well as all RBC Dain policies and regulations;

g.    that for a period of one year after his/her employment with RBC Dain ends, for any reason whatsoever, he/she will not directly or indirectly recruit or solicit, or aid in the recruitment or solicitation of any RBC Dain employee (other than the client associate supporting Employee at the time of termination) for employment with any broker-dealer or investment banking firm other than RBC Dain.

3.    For production generated during the first 13 months of employment, RBC Dain agrees to pay Employee on a monthly basis a 45% commission (subject to Ticket Size and Discounting Policies) on customer commissions actually received by RBC Dain for Employee's activities as an RBC Dain Financial Consultant. After this time and at the sole discretion of RBC management, RBC Dain will pay Employee either a monthly 35% commission rate or in accordance with the middle market commission schedule in effect from time to time.

4.    <u>Forgivable Loan:</u>

a.    Upon transfer of Employee's securities license(s), and in reliance on all of Employee's representations in paragraph 2, RBC Dain will loan Employee $685,132 pursuant to a Promissory Note. Employee understands that the amount of this loan is determined based on Employee's representation of his/her Base Commission Amount. Employee is obligated to repay that Promissory Note unless he/she continues as a Financial Consultant of RBC Dain. Subject to that condition, as set forth in more detail below, RBC Dain shall forgive amounts due under the Promissory Note as follows: On March 28, 2003, and on the last business day of each subsequent month as long as any amount of principal or interest is outstanding on the Promissory Note, RBC Dain shall forgive 1/84th of the Promissory Note and all accrued interest. Each of these dates is a "Monthly Anniversary Date."

b.    For each Monthly Anniversary Date, the forgiving of any debt shall take place only if Employee remains continuously and actively employed as a Financial Consultant by RBC Dain from the date such employment commenced through the entire Monthly Anniversary Date. At each Monthly Anniversary Date, if this condition is met, no notice by RBC Dain is necessary to effect the forgiving of the debt.

c.    The amount of any debt scheduled to be forgiven hereunder shall earn interest as specified in the Promissory Note. The amount of all accrued interest at each Monthly Anniversary Date shall be forgiven at the same time as the principal amount is forgiven.

d.    Upon the forgiving of any amounts due under the Promissory Note, Employee shall owe RBC Dain the amount that, in RBC Dain's sole judgment, is necessary to satisfy federal, state and local withholding tax requirements, including income tax and FICA withholding (the "Withholding Amount"). RBC Dain may deduct the Withholding Amount from Employee's compensation at any time from the forgiveness date forward until the full Withholding Amount is paid by Employee to RBC Dain.

e.    Employee understands that amounts of the principal and interest forgiven under this Agreement shall be disregarded for purposes of RBC Dain's employee benefit plans, including but not limited to, stock bonus plans and profit-sharing plans.

f.    Employee agrees that in the event of the termination of his/her employment with RBC Dain as a Financial Consultant for any reason whatsoever while any amount remains outstanding on the Promissory Note, that he/she will immediately repay to RBC Dain at RBC Dain's principal office at

Dain Rauscher Plaza, 60 South Sixth Street, Minneapolis, MN that portion of the amount of the Promissory Note which has not been forgiven on the date of such termination.

g.    To secure the repayment of the loan described in this paragraph, Employee is executing and delivering to RBC Dain the attached Promissory Note simultaneously with the execution of this Agreement. Employee further grants to RBC Dain the right to set off against amounts owed by RBC Dain to Employee, or held for the benefit of Employee by RBC Dain, pursuant to commissions generated or other amounts, against the amounts owing with respect to the Promissory Note, at or subsequent to the termination of Employee's employment at RBC Dain.

5.    Until such time as (1) the Promissory Note referenced above has been paid in full or forgiven, or (2) for a period of one year, whichever of these periods is less, in the event Employee's employment with RBC Dain is terminated for any reason, whether voluntarily or involuntarily, Employee agrees that he/she will not directly or indirectly:

a.    notify any client of RBC Dain that he/she is anticipating, or has decided to, accept employment from any broker-dealer or investment banking firm other than RBC Dain;

b.    solicit or aid in the solicitation of the transfer of the accounts, including the mailing or assistance in mailing of transfer of account forms, of any clients having accounts with RBC Dain and with whom the Employee shall have had any dealings whatsoever during the term of his/her employment by RBC Dain.

6.    Employee further agrees that, in the event of a violation of paragraphs 2(g) or 5, RBC Dain may apply for and obtain from any state or federal court a temporary restraining order ("TRO") or injunction prohibiting the violation of this paragraph pending arbitration before an NYSE or NASD arbitration panel, and a decision of that panel. Employee hereby consents to the entry of such a TRO or injunction. Furthermore, in the event that an award or order for injunctive or other relief shall be granted to RBC Dain in enforcing this paragraph, Employee agrees to pay any and all reasonable costs and expenses of RBC Dain (including attorney's fees) incurred in obtaining such relief.

7.    This Agreement shall be subject to and construed under the laws of the State of Minnesota.

8.    In the event that any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provisions hereof, and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

9.    The provisions of this Agreement shall inure to the benefit of and shall be binding upon RBC Dain, its successors and assigns, and upon the Employee and his/her personal representatives, executors and administrators. Any assignments by RBC Dain to a company affiliated with or controlled directly or indirectly by RBC Dain will be deemed valid and enforceable without the consent of the Employee. No right of Employee under this Agreement shall be assigned or assignable by voluntary or involuntary assignment.

10.    Both RBC Dain and Employee agree to abide by applicable terms, conditions and reporting and filing requirements as to the tax implications of the forgiving (or failure to forgive) of the loan amount and accrued interest, or any portion thereof.

11.    Employee hereby affirms and acknowledges that he/she has read this Agreement, that he/she understands the meaning of the terms of this Agreement and their effect, and that the provisions set forth in the Agreement are written in language understandable to him/her. Employee has had an opportunity to consult with an attorney and represents that he/she enters into this Agreement freely and voluntarily.

12.    This written document contains the entire agreement of Employee and RBC Dain relating to Employee's employment.  Employee represents that he/she is not relying on any oral or other written representations, and acknowledges that this Agreement supersedes any prior oral or written representations.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the thirty-first day of January, 2003.

_____
Brian M. Bittner

RBC DAIN RAUSCHER INC.

By: _____

Its: [Title]  Branch Manager
Private Client Group

# Statement of Claim
# Exhibit 2

 **RBC Dain Rauscher**

## <u>Employment Agreement</u>

January 31, 2003

THIS AGREEMENT is made and entered into on and as of the date written below between the below-named employee (hereinafter "Employee") and RBC Dain Rauscher Inc., a Minnesota corporation with its principal place of business at Dain Rauscher Plaza, 60 South Sixth Street, Minneapolis, MN 55402-4422 (hereinafter "RBC Dain").

WHEREAS, Employee desires to enter into the employment of RBC Dain as its Financial Consultant for the compensation and on the terms provided herein; and

WHEREAS, RBC Dain desires to employ Employee for the term herein on the terms and conditions stated below.

NOW, THEREFORE, in consideration of their mutual agreements, RBC Dain and Employee agree as follows:

1.  RBC Dain agrees to employ Employee, and Employee agrees to serve RBC Dain as a Financial Consultant. Nothing herein is a promise of employment for a fixed term. Employee may resign, or RBC Dain may terminate the employment, at any time for any reason. Any compensation is contingent on Employee's continued employment with RBC Dain.

2.  As a major inducement for the employment of Employee by RBC Dain, Employee agrees and/or warrants and represents:

    a.  that his/her total commissions, fees, etc., for the twelve month period immediately preceding his/her employment with RBC Dain was $1,522,517, which will be defined as the "Base Commission Amount" for this agreement;

    b.  that his/her total assets under management ("AUM") in the month immediately preceding his/her employment with RBC Dain was $5,951,504, which will be defined as the "Base AUM" for this agreement;

    c.  that he/she will keep confidential RBC Dain's business methods and procedures and its customer account records, posting sheets, cross references, and monthly statements (all of which are hereinafter referred to collectively as the "Records"), and will not copy or reproduce any of those things, nor use or allow others to use any of those things, except for the benefit of RBC Dain and in furtherance of this Employment Agreement;

    d.  that he/she is fully registered and/or licensed with all applicable regulatory authorities as a registered representative, and has disclosed in writing to RBC Dain all past or present circumstances that could have an adverse effect upon the status of such licenses and/or registrations, or hinder prompt and effective transfer of such licenses and/or registrations;

    e.  that he/she will devote all of his/her productive efforts for the benefit of RBC Dain, devoting "full-time" service to RBC Dain within the meaning of applicable NYSE regulations, shall be and remain loyal to RBC Dain during the term of his/her employment, and shall not, directly or indirectly, solicit or sell securities except on behalf of RBC Dain;

f.    that he/she will conduct all business affairs while in the employment of RBC Dain in accordance with the spirit and full compliance of all securities rules and regulations, as well as all RBC Dain policies and regulations;

g.    that for a period of one year after his/her employment with RBC Dain ends, for any reason whatsoever, he/she will not directly or indirectly recruit or solicit, or aid in the recruitment or solicitation of any RBC Dain employee (other than the client associate supporting Employee at the time of termination) for employment with any broker-dealer or investment banking firm other than RBC Dain.

3.    For production generated during the first 13 months of employment, RBC Dain agrees to pay Employee on a monthly basis a 45% commission (subject to Ticket Size and Discounting Policies) on customer commissions actually received by RBC Dain for Employee's activities as an RBC Dain Financial Consultant. After this time and at the sole discretion of RBC management, RBC Dain will pay Employee either a monthly 35% commission rate or in accordance with the middle market commission schedule in effect from time to time.

4.    <u>Forgivable Loan:</u>

a.    Upon transfer of Employee's securities license(s), and in reliance on all of Employee's representations in paragraph 2, RBC Dain will loan Employee $685,132 pursuant to a Promissory Note. Employee understands that the amount of this loan is determined based on Employee's representation of his/her Base Commission Amount. Employee is obligated to repay that Promissory Note unless he/she continues as a Financial Consultant of RBC Dain. Subject to that condition, as set forth in more detail below, RBC Dain shall forgive amounts due under the Promissory Note as follows: On March 28, 2003, and on the last business day of each subsequent month as long as any amount of principal or interest is outstanding on the Promissory Note, RBC Dain shall forgive 1/84th of the Promissory Note and all accrued interest. Each of these dates is a "Monthly Anniversary Date."

b.    For each Monthly Anniversary Date, the forgiving of any debt shall take place only if Employee remains continuously and actively employed as a Financial Consultant by RBC Dain from the date such employment commenced through the entire Monthly Anniversary Date. At each Monthly Anniversary Date, if this condition is met, no notice by RBC Dain is necessary to effect the forgiving of the debt.

c.    The amount of any debt scheduled to be forgiven hereunder shall earn interest as specified in the Promissory Note. The amount of all accrued interest at each Monthly Anniversary Date shall be forgiven at the same time as the principal amount is forgiven.

d.    Upon the forgiving of any amounts due under the Promissory Note, Employee shall owe RBC Dain the amount that, in RBC Dain's sole judgment, is necessary to satisfy federal, state and local withholding tax requirements, including income tax and FICA withholding (the "Withholding Amount"). RBC Dain may deduct the Withholding Amount from Employee's compensation at any time from the forgiveness date forward until the full Withholding Amount is paid by Employee to RBC Dain.

e.    Employee understands that amounts of the principal and interest forgiven under this Agreement shall be disregarded for purposes of RBC Dain's employee benefit plans, including but not limited to, stock bonus plans and profit-sharing plans.

f.    Employee agrees that in the event of the termination of his/her employment with RBC Dain as a Financial Consultant for any reason whatsoever while any amount remains outstanding on the Promissory Note, that he/she will immediately repay to RBC Dain at RBC Dain's principal office at

Dain Rauscher Plaza, 60 South Sixth Street, Minneapolis, MN that portion of the amount of the Promissory Note which has not been forgiven on the date of such termination.

g.   To secure the repayment of the loan described in this paragraph, Employee is executing and delivering to RBC Dain the attached Promissory Note simultaneously with the execution of this Agreement. Employee further grants to RBC Dain the right to set off against amounts owed by RBC Dain to Employee, or held for the benefit of Employee by RBC Dain, pursuant to commissions generated or other amounts, against the amounts owing with respect to the Promissory Note, at or subsequent to the termination of Employee's employment at RBC Dain.

5.   Until such time as (1) the Promissory Note referenced above has been paid in full or forgiven, or (2) for a period of one year, whichever of these periods is less, in the event Employee's employment with RBC Dain is terminated for any reason, whether voluntarily or involuntarily, Employee agrees that he/she will not directly or indirectly:

a.   notify any client of RBC Dain that he/she is anticipating, or has decided to, accept employment from any broker-dealer or investment banking firm other than RBC Dain;

b.   solicit or aid in the solicitation of the transfer of the accounts, including the mailing or assistance in mailing of transfer of account forms, of any clients having accounts with RBC Dain and with whom the Employee shall have had any dealings whatsoever during the term of his/her employment by RBC Dain.

6.   Employee further agrees that, in the event of a violation of paragraphs 2(g) or 5, RBC Dain may apply for and obtain from any state or federal court a temporary restraining order ("TRO") or injunction prohibiting the violation of this paragraph pending arbitration before an NYSE or NASD arbitration panel, and a decision of that panel. Employee hereby consents to the entry of such a TRO or injunction. Furthermore, in the event that an award or order for injunctive or other relief shall be granted to RBC Dain in enforcing this paragraph, Employee agrees to pay any and all reasonable costs and expenses of RBC Dain (including attorney's fees) incurred in obtaining such relief.

7.   This Agreement shall be subject to and construed under the laws of the State of Minnesota.

8.   In the event that any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provisions hereof, and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

9.   The provisions of this Agreement shall inure to the benefit of and shall be binding upon RBC Dain, its successors and assigns, and upon the Employee and his/her personal representatives, executors and administrators. Any assignments by RBC Dain to a company affiliated with or controlled directly or indirectly by RBC Dain will be deemed valid and enforceable without the consent of the Employee. No right of Employee under this Agreement shall be assigned or assignable by voluntary or involuntary assignment.

10.  Both RBC Dain and Employee agree to abide by applicable terms, conditions and reporting and filing requirements as to the tax implications of the forgiving (or failure to forgive) of the loan amount and accrued interest, or any portion thereof.

11.  Employee hereby affirms and acknowledges that he/she has read this Agreement, that he/she understands the meaning of the terms of this Agreement and their effect, and that the provisions set forth in the Agreement are written in language understandable to him/her. Employee has had an opportunity to consult with an attorney and represents that he/she enters into this Agreement freely and voluntarily.

12.    This written document contains the entire agreement of Employee and RBC Dain relating to Employee's employment.  Employee represents that he/she is not relying on any oral or other written representations, and acknowledges that this Agreement supersedes any prior oral or written representations.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the thirty-first day of January, 2003.

Brian M. Bittner

RBC DAIN RAUSCHER INC.

By: _____

Its: [Title] Branch Manager
Private Client Group

# Statement of Claim
# Exhibit 3

 **RBC Capital Markets**

One Liberty Plaza
165 Broadway
New York, NY 10006-1404
Telephone (212) 428-6200
(212) 858-7000

October 29, 2004

Mr. Brian M. Bittner                                     *Personal & Confidential*
684 Broadway, Apt. 3E
New York, New York 10012

Dear Brian:

The purpose of this letter is to confirm our discussions regarding your employment agreement with RBC Dain Rauscher Inc., dated January 31, 2003 (the "Dain Agreement"). As we have discussed, your employment pursuant to the terms of the Dain Agreement will end effective October 31, 2004. Thereafter, you will be employed by RBC Capital Markets Corporation ("RBC" or the "Firm"), part of RBC Capital Markets, the corporate and investment banking arm of RBC Financial Group[1] pursuant to this letter which, when executed by you, will constitute our agreement as follows:

Position: You will be a Salesperson in the Middle Markets Group (the "Group"). You will have the title of Director in RBC Capital Markets and will report directly to Henry Goodman, Managing Director and Head of U.S. Institutional Equity Sales and Jennifer Winstel, Managing Director, Middle Markets, subject to the understanding that the Firm reserves the right to alter your reporting lines from time to time. You agree to perform such duties and exercise such powers for RBC Financial Group as may from time to time be designated and to accept any position with the RBC Financial Group as may reasonably be required, consistent with the purposes for which you are being hired and your background, experience and prior business activity.

During your employment, you shall devote your full business time, attention, energy and best efforts to the business and affairs of the Firm. Moreover, you agree that you shall not, either for your own account, jointly with or on behalf of any other person, directly or indirectly, engage or be interested (as an employee, director, partner, investor, stockholder, advisor, consultant or in any other capacity) in any other enterprise or business that (i) detracts from the devotion of your full time and attention to services under this letter agreement, (ii) interferes with the performance of your duties or is contrary to the interests of the Firm or (iii) involves activities reasonably deemed by the Firm to be injurious to the business, reputation or goodwill of the Firm, unless such engagement is fully disclosed and approved in writing by the Firm prior to the undertaking.

---

[1] For purposes of this letter agreement, the term "RBC Financial Group" includes RBC, RBC Dominion Securities, Inc., Royal Bank of Canada, RBC Dain Rauscher, Inc., RBC Capital Markets and each and all of their affiliates, subsidiaries, branches, agencies, business units, successors and assigns.

RBC CAPITAL MARKETS

Mr. Brian M. Bittner
October 29, 2004
Page 2

| | |
|---|---|
| **Effective Date:** | You acknowledge that the Dain Agreement terminates effective October 31, 2004 and that this agreement takes effect on November 1, 2004. You will be employed by the Firm on an at-will basis. |
| **Licensing:** | You are required to have your Series 7 and 63 licenses. |
| **Compensation:** | You shall be eligible to receive commissions, payable monthly in arrears, subject to all withholdings and deductions, on your Net Equity Revenues (as that term is recognized by the Group and RBC) in accordance with the middle market commission schedule in effect from time to time. |
| | Receipt of any commission payments is conditioned on your being in the employ of RBC through the date such payment is paid in the normal course of business. |
| | You understand and agree that the determination of Net Equity Revenues shall be within the sole discretion of RBC and its decision in those respects shall be final and conclusive. |
| **Compensation Deferral:** | You will be subject to the RBC Capital Markets Compensation Administration Plan, as amended from time to time (the "CAP Plan"). The CAP Plan currently provides, among other things, that 20% of any compensation above US$200,000 and 25% of any compensation above US$650,000 must be deferred. Your rights and obligations under the CAP Plan shall be determined in accordance with the governing plan document (a copy of which will be provided to you), as may be amended from time to time. Notwithstanding the foregoing, your compensation for Fiscal Year 2005 shall not be subject to the CAP Plan. |
| **Forgivable Loan:** | The Promissory Note dated January 31, 2003, in the amount of $685,132 plus interest, executed by you in favor of RBC Dain Rauscher Inc. (the "Promissory Note"), which has been assigned to RBC, shall remain in effect and all terms and conditions thereof shall continue to apply. |
| | Upon forgiving any amounts due, you shall owe RBC the amount that, in RBC's sole discretion, is necessary to satisfy federal, state and local tax withholding requirements, including the income tax and FICA withholdings (the "Withholding Amount"). RBC may deduct the Withholding Amount from your compensation at any time from the forgiveness date until the Withholding Amount is satisfied by you. |
| | You agree that any commissions or other amounts due to you from RBC shall be subject to offset or recoupment to the extent that you remain indebted to RBC under the Promissory Note. |
| | You understand that the amounts of the principal and interest forgiven shall be disregarded for purposes of RBC's employee benefit plans, including but not |

Mr. Brian M. Bittner
October 29, 2004
Page 3

limited to, stock bonus plans and profit sharing plans.

Until such time as (1) the Promissory Note has been paid in full or forgiven, or (2) for a period of one year, whichever is less, in the event you are no longer employed by RBC for any reason, whether voluntary or involuntary, you agree that you will not directly or indirectly:

(a) notify any client of RBC that you are anticipating, or have decided to, accept employment from any broker-dealer or investment-banking firm other than RBC;

(b) solicit or aid in the solicitation or transfer of the accounts, including the mailing or assistance in mailing of transfer account forms, of any clients having accounts with RBC and with whom you have had any dealings whatsoever during the term of your employment by RBC.

If you cease to be employed by RBC for any reason, the unpaid balance of the principal sum, plus accrued interest, shall be due and payable as of the date of termination of employment, and you agree to immediately repay to RBC the portion of the Promissory Note which has not been forgiven as of the date of termination of employment.

The terms of the Promissory Note shall be governed by the laws of the State of New York, without regard to principles of conflicts of laws.

If any provision of this section conflicts with a provision contained in the Promissory Note, the provision in this letter agreement shall govern.

**Termination of Employment:**    If you resign or the Firm terminates your employment, you agree that you will only be entitled to receive any earned and unpaid commissions through the date of your termination of employment, and you shall not be entitled to receive any further compensation of any kind from RBC.

**Benefits:**    You shall be eligible for employee benefits on the same basis as those benefits are made available to other RBC employees in comparable positions, except you shall not be eligible for severance under any severance plan maintained by RBC if your employment is terminated by RBC.

Your annual vacation entitlement will be four (4) weeks pro-rated for calendar year 2004.

Mr. Brian M. Bittner
October 29, 2004
Page 4

Non-Solicitation:     It is agreed that during your employment and for a period of one (1) year following the termination of your employment, regardless of the reason for the termination, you shall not, without the advance written consent of the Firm: (i)   solicit, recruit, induce, procure or attempt to solicit, recruit, induce or procure, directly or indirectly, any person who is an employee of RBC or any member of RBC Financial Group or who was such an employee at any time during the last twelve months of your employment; (ii) encourage any such person to breach his or her employment obligations to RBC or any member of RBC Financial Group; (iii) assist in any way in the hiring or recruitment of any such person by any other individual, sole proprietorship, firm, company, business, partnership, broker-dealer, mutual fund, investment advisor, investment company, hedge fund, bank or other enterprise; (iv) encourage any such person to terminate his or her employment; (v) divert or attempt to divert, directly or indirectly, any transaction that is under consideration by RBC or any other member of the RBC Financial Group at the time your employment ends or (vi) solicit or induce, directly or indirectly, on behalf of yourself or any third party, and client or potential client to terminate its relationship with any member of RBC Financial Group.

Confidentiality:     During your employment and following the termination of your employment, regardless of the reason, you agree to keep confidential any and all non-public information provided to or otherwise obtained by you, relating to RBC or any member of RBC Financial Group or their clients, including, without limitation, financial information or plans; sales and marketing information or plans; business or strategic plans; salary, bonus or other personnel information; information concerning new or potential products or markets; revenues; client lists; client account information; or business levels, estimates or projections, and will not at any time use for your benefit, or the benefit of others or communicate by any means whatsoever such information obtained by you to any other person.

You acknowledge and agree that your services are of a unique nature with significant sales responsibilities and broad access to Firm plans, strategies and methods of operations, and that as such, it is fair and reasonable in order to protect the good will, business, operations, assets and reputation of the Firm and the other members of RBC Financial Group that you make the covenants and undertakings set forth in the Non-Solicitation and Confidentiality provisions of this letter agreement. Furthermore, you agree that the members of RBC Financial Group are third party beneficiaries of the covenants contained in this letter agreement and if you breach or attempt to breach any of the foregoing provisions, the Firm (or any other member of the RBC Financial Group that employs you or which is harmed by your misconduct) may be irreparably harmed and monetary damages may not provide an adequate remedy. Accordingly, it is agreed that the Firm (or any other member of RBC Financial Group that you are actually employed by during

Mr. Brian M. Bittner
October 29, 2004
Page 5

the relevant period or which is harmed by your misconduct) may apply for and shall be entitled to temporary, preliminary and permanent injunctive relief (without the necessity of posting a bond or other security) in order to prevent a material breach of this letter agreement or to specifically enforce the provisions hereof. It is understood that any such injunctive remedy shall not be exclusive or waive any rights to seek other remedies at law or in equity. The parties hereto further agree that the covenants and undertakings covered by this letter agreement are reasonable in light of the facts as they exist on the date hereof. However, if at any time a court or other body having jurisdiction over this letter agreement shall determine that any of the subject matter or duration is unreasonable in any respect, it shall be reduced, and not terminated, as such court or body determines may be reasonable. If except with respect to the foregoing sentence, any provision or term of this letter agreement is held to be invalid, prohibited or unenforceable for any reason, such provision or term shall be ineffective to the extent of such invalidity, prohibition or unenforceability, without invalidating the remaining provisions of this letter agreement.

This letter agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to principles of conflict of laws. If any dispute should arise concerning this letter agreement, the interpretation of the terms of this letter agreement or otherwise relating in any way to the terms and conditions of your employment or its termination, including any claim of statutory discrimination, the parties agree to submit the dispute to arbitration before a panel of three (3) arbitrators at the National Association of Securities Dealers, Inc. in New York, New York or the New York Stock Exchange, Inc. For injunctive relief, it is agreed that any court of competent jurisdiction may also entertain an application by either party. Any award of the arbitrators shall be final and binding, subject only to any right of appeal that may lie as a matter of law.

You will be subject to the terms and conditions concerning all Firm policies as set forth in the Code of Conduct, Compliance Manual and Employee Handbook and those posted on any RBC website. You agree to deliver promptly on termination of your employment, or at any other time on request by the Firm, all property and equipment of the Firm, its affiliates or clients, of any kind in your possession.

You represent and warrant that you are not in breach of any agreement requiring you to preserve the confidentiality of any information, client lists, trade secrets or other confidential information or any agreement not to compete or interfere with any prior employer, and that neither the execution of this letter nor the performance by you of your obligations under this letter agreement will conflict with, result in a breach of, or constitute a default under, any agreement to which you are a party or to which you may be subject.

This letter contains the entire understanding between the parties on the subjects covered herein and supersedes all prior agreements, arrangements and understandings, whether written or oral. You acknowledge that you have not relied on any representations not contained in this agreement. This agreement may not be changed orally, but only in writing signed by both parties.

RBC CAPITAL MARKETS

Mr. Brian M. Bittner
October 29, 2004
Page 6

If you have any questions regarding the above, please do not hesitate to contact Susan Cella at
(212) 428-6467.  On behalf of RBC, let us extend our delight at your deciding to continue your
employment with RBC Capital Markets.


Sincerely,

Argyle I. Burke
Managing Director, Human Resources


_____


**ACCEPTED AND AGREED TO BY:**


_____          _____
Brian M. Bittner                                   Date


19300.0128 #519361


**RBC CAPITAL MARKETS**

# Statement of Claim
# Exhibit 4

## Bittner, Brian M

June 10, 2005

To Jennifer Winstel:

I, Brian Matthew Bittner, resign from my position with RBC Capital Markets, effective immediately.

Regards,

Brian M. bittner

From the Sales Team of:
*Brian M. Bittner, Director*
*Mike Maher, Jr., Director*
*Justin Spitzer, Associate*
*Equity Sales*
**RBC Capital Markets**
*1211 Avenue of the Americas*
*New York, NY 10036*

*brian.bittner@rbccm.com*
*bbittner@bloomberg.net*
*AOL IM : Brian B RBC*
*(212) 703-6090 – Voice*
*(800) 833-8041 – Toll Free*
*(212) 703-6153 – Fax*

1

# Statement of Claim
# Exhibit 5



**RBC Capital Markets**

RBC Capital Markets Corporation
60 South Sixth Street
Minneapolis, MN 55402

June 23, 2005

Mr. Brian M. Bittner
684 Broadway, #3E
New York, New York 10012

Dear Brian:

As stated in your Promissory Note dated January 31, 2003, your forgivable loan becomes immediately due and payable upon your voluntary termination. As of May 31, 2005, your remaining principal balance is $464,911.09. This amount reflects the loan forgiveness processed on June 10, 2005.

Please issue a check payable to the order of RBC Capital Markets Corporation in the amount of $466,220.59, which represents the outstanding principal balance plus accrued interest of $1,309.50.

Please send your check to Paul Galicki in our Accounting Department at:

Paul D. Galicki
Controller
One Liberty Plaza
New York, NY 10006
Phone: (212) 858-7184

Please feel free to call me at 612-313-1055 if you have any questions.

Sincerely,

Laura J. Carlson
Vice President & Human Resources Manager
RBC Capital Markets

cc:    Paul Galicki
       Employee File

# Exhibit C

# ALONSO, ANDALKAR & KAHN, P.C.

ATTORNEYS AT LAW
920 BROADWAY
NEW YORK, NEW YORK 10010
(212) 598-5900
WWW.ALONSOLEGAL.COM

MARK J. ALONSO
MANOJ R. ANDALKAR⁺
JAYMEE KAHN⁺

PRITINA BHAVSAR⁑
ALEXANDRA C. SISKOPOULOS >
JAMES A. CRACOLICI⁺
JOAN TORO⁺
LISA RYU⁺
JULIE KO⁺

EUGENE L. SMALL
OF COUNSEL

TELECOPIER    (212) 598-4650
EMAIL:ESMALL@ALONSOLEGAL.COM

NEW JERSEY OFFICE
900 QUEEN ANNE ROAD
TEANECK, NJ 07666
(201) 801-0259

⁺MEMBER OF THE NY AND NJ BAR
⁑MEMBER OF THE NY AND CT BAR
>MEMBER OF THE NY AND MA BAR

January 11, 2006

**FEDERAL EXPRESS**

Mr. George Friedman
Director of Arbitration
NASD Dispute Resolution, Inc.
One Liberty Plaza  -  27ᵗʰ Fl.
165 Broadway
New York, NY  10006

Re:  *RBC Capital Markets Corporation v. Brian M. Bittner*
*NASD Dispute Resolution Case No. 05-05482*

Dear Mr. Friedman:

This letter shall constitute the Statement of Answer of Brian M. Bittner ("Bittner"
and/or Respondent) to the Statement of Claim filed by RBC Capital Markets Corporation
("RBC") with the office of NASD Dispute Resolution.

## PRELIMINARY STATEMENT

RBC's Statement of Claim purports to assert a straightforward contractual claim
for the recovery of money owed pursuant to a certain Promissory Note ("the Note")
signed by Respondent Bittner in February 2003.  However, as will be borne out by the
credible evidence in this case, as both a matter of law and equity, RBC is not entitled to
the return of the money it now seeks to recover due its failure to abide by the agreement it
made with Mr. Bittner upon his hire and its violation of federal and state laws regulating

Mr. George Friedman
January 11, 2006
Page 2

conduct in the workplace.  More specifically, RBC made material misrepresentations to

Mr. Bittner regarding the terms of his employment at the time of his hire and acted in

violation of the Civil Rights Act of 1964 and the New York State Human Rights law by

engaging in conduct that created a hostile work environment that led to Mr. Bittner's

constructive discharge from RBC on June 10, 2005.  By virtue of their egregious

misconduct, RBC cannot enforce the terms of the Note and is liable to Mr. Bittner for

damages arising out of his loss of pay and for the mental anguish he suffered as a direct

result of the hostile work environment created by RBC.


## FACTUAL BACKGROUND

Mr. Bittner began his career in the brokerage business in 1993 at Lehman

Brothers.  He later moved to Oppenheimer & Company in 1997.  Over the course of 6

years at Oppenheimer, he developed a substantial institutional business and by 2002 had

gross commission production of over $1.5 million dollars.  Unfortunately, Oppenheimer

was sold in January 2003 to Fahnstock, a firm with a poor reputation in the brokerage

industry, and more significantly, no institutional platform for a broker like Mr. Bittner to

facilitate his business.  Hence, Mr. Bittner was forced to find a new home and

interviewed with a number of well-known firms in an effort to find the best environment

to run his business.

Mr. Bittner ultimately received offers to join Bear Stearns and A.G. Edwards, but

based upon the representations made to him by RBC's Managing Director, Jennifer

Winstel, he decided to join RBC in 2003 for the purpose of continuing his institutional

brokerage business in RBC's Middle Markets Group, a group of brokers dedicated to

serving the smaller segment of the institutional market.  Brian's immediate supervisor

was Ms. Winstel, the head of the Middle Markets Group.  She reported directly to Henry

Goodman, the head of U. S. Institutional Equity Sales for RBC.  It was Ms. Winstel who

recruited and hired Mr. Bittner and who offered him over $685,000 in the form of a

forgivable loan to transfer his business from Oppenheimer to RBC.


At the time of his hiring, RBC's authorized agent, Jennifer Winstel, made several

promises to Mr. Bittner, each of which was a substantial factor in his decision to accept

Mr. George Friedman
January 11, 2006
Page 3

employment with RBC. Significantly, Ms. Winstel told Mr. Bittner and his partners that their payout would never go below 35% after the first year accelerated payout of 45% expired. She also told Mr. Bittner and his partners that their existing institutional relationships would not be usurped by RBC's institutional desk. That assurance was particularly critical to Mr. Bittner's decision to accept employment because he did not want to risk the possibility that the firm would poach his clients once they began to generate significant commission business. Neither of these promises was kept.

RBC cut Mr. Bittner's payout to 25% at the end of his first year and forced him to relinquish his account relationship with Fifth Third Bancorp, one of his largest preexisting institutional accounts. His payout on the business generated by Fifth Third Bancorp was therefore reduced to 25% of the 25% charged by RBC's institutional desk. RBC later seized some of Mr. Bittner's other accounts as well in breach of their promise not to do so. The breach of these agreements by RBC was without any justification and caused substantial economic harm to Mr. Bittner.

RBC also failed to abide by other promises made to Mr. Bittner in connection with his hiring. For example, Mr. Bittner and his group were promised by Ms. Winstel that the firm would assign them certain active accounts (Tier II accounts) from the institutional desk, yet neither Mr. Bittner nor his colleagues ever received a single account of this type. They were also promised a staff with a budget sufficient to pay for three associates and two assistants. However, RBC repeatedly cut the budget thereby forcing a reduction the size of the staff which greatly impacted the group's overall productivity. By the time Mr. Bittner left in June 2005, the entire staff consisted of one associate and one assistant who were shared with another group of brokers.

Mr. Bittner complained repeatedly to both Ms. Winstel and Mr. Goodman about the improper conduct of RBC and its impact on his business. In each instance he was told in substance that if he didn't like it he could leave and "write us a check." In one notable meeting in or around February 2005, Mr. Bittner and his partners were called into a meeting in Ms. Winstel's office where her boss Henry Goodman was also present. Mr. Goodman advised Mr. Bittner and his colleagues that the firm was taking away another significant account and turning it over to the institutional desk. When a colleague of Mr. Bittner's asked Mr. Goodman whether their group was simply going to serve as

Mr. George Friedman
January 11, 2006
Page 4

"incubators" for RBC's institutional business, Mr. Goodman said "yes you are" and then stood up and pointed his finger in a threatening manner at Mr. Bittner and his partners and exploded into the following verbatim expletive laden diatribe:

**"Fuck you guys.  If you don't fucking like it you can write
me a fucking check and get the fuck out of here."**

Mr. Bittner had never been spoken to in that manner before by anyone and was shocked, embarrassed and humiliated.  His immediate thought was to quit his job immediately but he knew that would be imprudent because he was in the middle of refinancing his cooperative apartment and needed to remain employed in order for the refinancing to be completed.  Thereafter, up until the time the refinancing was completed in late May, Mr. Goodman simply ignored Mr. Bittner.  Mr. Bittner resigned on June 10, 2003 and has been unemployed ever since.

As a direct result of RBC's breach of several promises made by its authorized agent, Jennifer Winstel, and the gross misconduct of Mr. Goodman, the Head of U.S. Institutional Equity Sales for RBC, Mr. Bittner had no realistic option other then to leave RBC.  Mr. Bittner had no desire to work in a hostile environment where his superior either berated him or ignored him, or in a place where promises were routinely broken, nor should he have had to.  Mr. Bittner's experience at RBC, and particularly the manner in which Mr. Goodman treated him, caused him to suffer terrible mental anguish, embarrassment and humiliation, and has left him bitter and disillusioned with the brokerage business.

*Principles of Contract Law and Equity Dictate
That RBC's Claim Must Fail*

It is axiomatic that inherent in all contractual agreements is an implied covenant of good faith and fair dealing between the parties to the agreement.  Moreover, a breach of the covenant of good faith and fair dealing is a breach of the underlying contract. *Fasolino Foods Co. v. Banca Nazionale Del Lavoro, 961 F. 2d 1052, 1056 (2d Cir. 1992).* "The rule is grounded in many cases that in every contract there is an implied undertaking on the part of each party that he will not intentionally and purposely do anything to prevent the other party from carrying out the agreement on his part."

Mr. George Friedman
January 11, 2006
Page 5

*Grad v. Roberts, 14 N.Y. 2d 70 (1964).* Similarly, the first maxim of equity is the
doctrine of unclean hands.

> A court of equity in its endeavors to maintain, promote, and enforce the
> interests of justice, stringently demands good faith, fairness, and
> uprightness from the litigant parties who come before it either as plaintiffs
> or defendants. Such salutary and basic rule is stated in the form of an
> ancient and most favored precept or maxim that he who comes into equity
> must come with clean hands or 'he that hath committed iniquity shall not
> have equity.' A party who comes into court with unclean hands, seeking
> relief in equity to be granted by the affirmative exercise of the power of
> equity, will be denied relief. Equity should deny him its relief, leaving
> him to pursue whatever cause of action he may have by invoking a remedy
> at law.

*Kromberg v. Kromberg*, 56 A.D.2d 910, 392 N.Y.S.2d 907 (2nd Dept. 1977) Mollen, J.
dissenting, (quoting, 20 N.Y.Jur., Equity, §§102, 103).

RBC's failure to abide by the terms of its agreement with Mr. Bittner constitutes a
material breach of the contract between the parties and precludes RBC from being able to
enforce the strict terms of the Note. Indeed, the Note itself is a classic contract of
adhesion containing standard boilerplate language requiring the Note to be repaid if
employment is terminated "for any reason." Because the terms of the Note were not
negotiated, the language does not and cannot constitute a knowing waiver of a person's
state or federal statutory rights under anti-discrimination laws so as to prevent a person
from seeking legal redress for actionable wrongdoing, as is the case here. More to the
point, from a pure contractual standpoint, a party who has breached a contract is not
entitled to strict enforcement the agreement.

*Hostile Work Environment*

It is well settled that if an employer deliberately makes an employee's working
conditions so intolerable that the employee is forced into a voluntary resignation,
constructive discharge occurs and the employer is liable for any illegal conduct involved
therein as if it had formally discharged the employee. *Young v. Southwestern Savings
and Loan, 509 F.2d 140 (5th Cir. 1975).* In determining whether or not a constructive
discharge has taken place, "the trier of fact must be satisfied that the … working
conditions would have been so difficult or unpleasant that a reasonable person in the

Mr. George Friedman
January 11, 2006
Page 6

employee's shoes would have felt compelled to resign." *Pena v. Brattleboro Retreat, 702 F.2d 322 (2d Cir. 1983)(citing Alicea Rosado v. Garcia Santiago, 562 F.2d 114,119 (1st Cir.1977).)*

New York State Executive Law § 296 sets forth unlawful discriminatory practices by an employer against an employee. Moreover, under federal law, where a workplace is permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter conditions of a victim's employment and create an abusive working environment, Title VII of the Civil Rights Act of 1964 is violated, *§ 703(a)(1), as amended, 42 U.S.C.A. § 20002e-2(a)(1).* It is also well settled that an employer can be liable for a discriminatory act of a supervisor toward an employee and that the employee can receive compensatory damages for mental anguish. *In the Matter of Capabilities, Inc. v. State Division of Human Rights, 148 A.D.2d 861 (3rd Dept. 1989).*

Here, RBC's Managing Director of U.S. Institutional Equities, Henry Goodman, deliberately engaged in conduct intended to intimidate, ridicule and insult Respondent Bittner. His expletive laden screaming tirade aimed principally at Mr. Bittner, in the presence of his immediate supervisor, Ms. Winstel, was humiliating and embarrassing to Mr. Bittner and had the ultimate effect of creating a hostile working environment that was intolerable to him, as it would have been to any reasonable person. Furthermore, after he concluded his rant at Mr. Bittner and his partners, Mr. Goodman chose to completely ignore Mr. Bittner for nearly four months. As a direct result of Mr. Goodman's inappropriate and *illegal* conduct as a supervisor, Mr. Bittner was constructively discharged and has suffered damages for loss of pay and mental anguish.

## AFFIRMATIVE DEFENSES
### FIRST AFFIRMATIVE DEFENSE
(Unclean Hands)

RBC's claims are barred, in whole or in part, by the equitable doctrine of unclean hands.

## SECOND AFFIRMATIVE DEFENSE
(Equitable Estoppel)

RBC's claims are barred, in whole or in part, by the doctrine of equitable estoppel.

Mr. George Friedman
January 11, 2006
Page 7

## THIRD AFFIRMATIVE DEFENSE
### (Breach of Contract)

RBC's claims are barred, in whole or in part, because the alleged breach of contract it seeks to recover on was occasioned by its own breach of the implied covenant of good faith and fair dealing inherent in all contractual undertakings.

## FOURTH AFFIRMATIVE DEFENSE
### (Comparative Fault)

RBC's claims are barred, in whole or in part, because the damages alleged were proximately caused by Claimant's own misconduct and were not caused by any act or conduct attributable to Respondent.

## FIFTH AFFIRMATIVE DEFENSE
### (Unconscionability)

The damages alleged by RBC are barred, in whole or in part, because the terms of the Promissory Note are unconscionable on their face. The Note constitutes a contract of adhesion because the terms were not negotiable.

## SIXTH AFFIRMATIVE DEFENSE
### (Fraud in the Inducement)

RBC's claims are barred, in whole or in part, because the Promissory Note was procured by fraud.

## SEVENTH AFFIRMATIVE DEFENSE
### (Other Defenses)

To the extent not set forth herein, Respondent reserves the right to assert additional defenses that become available or apparent during discovery and to amend his Answer accordingly.

## RESPONDENT BITTNER'S COUNTERCLAIM

As set forth above, Mr. Bittner was subjected to intimidation, ridicule

Mr. George Friedman
January 11, 2006
Page 8

humiliation and embarrassment as a direct result of the conduct of RBC's authorized

agent, Henry Goodman. Mr. Goodman's conduct created a hostile work environment in

violation of Title VII of the Civil Rights Act of 1964 and the New York State Human

Rights Law. RBC is liable for Mr. Goodman's conduct under federal and state statutes as

well as common law agency principles of respondeat superior. Accordingly, Mr. Bittner

seeks damages for lost pay in an amount to be determined at the time of hearing and for

mental anguish in the amount of $500,000, as well as all costs of this proceeding,

including attorneys fees.

WHEREFORE, Respondent Brian Bittner respectfully requests that Claimant's

Statement of Claim be dismissed in its entirety and that Respondent's counterclaim be

sustained in an amount to be determined at the hearing, but in no event less than

$500,000.

Respectfully submitted,

Eugene L. Small

## CERTIFICATE OF SERVICE

I AFFIRM THAT A COPY OF THE FOREGOING ANSWER TO THE STATEMENT

OF CLAIM WAS SERVED THIS 11th DAY OF JANUARY, 2006 BY FEDERAL

EXPRESS ON RBC CAPITAL MARKETS CORPORATION BY SENDING IT TO

THE FOLLOWING ADDRESS:

Ralph DeSena, Esq.
Vice President & Senior Counsel
RBC Capital Markets Corporation
One Liberty Plaza, 5th Fl.
165 Broadway
New York, NY 10006-1404

Eugene L. Small

# Exhibit D

March 27, 2006


Ralph DeSena, Esq.
RBC Capital Markets Corporation
165 Broadway
One Liberty Plaza 5th Floor
New York, NY  10006-1404

Subject:       NASD Dispute Resolution Arbitration Number 05-05482
               RBC Capital Markets Corporation v. Brian M. Bittner

Dear Mr. DeSena:

This letter is to confirm that the next hearing session in the above-captioned matter will be held on:

December 19, 2006 at 09:30 AM
at
NASD Dispute Resolution
27th Floor (PHOTO ID REQUIRED)
One Liberty Plaza
New York, NY  10006
212-858-4200

Additional hearing session(s) are scheduled on: December 20, 2006.

Very truly yours,

Yvette Lugo
Logistical Assistant II
212-858-4379   Fax: 301-527-4905


YL:YL:LC03A
rc: 06/02


RECIPIENTS:
       Ralph DeSena, Esq., RBC Capital Markets Corporation
       RBC Capital Markets Corporation, 165 Broadway, One Liberty Plaza 5th Floor,
       New York, NY  10006-1404

Eugene L. Small, Esq., Brian M. Bittner
Alonso, Andalkar & Kahn, P.C., 920 Broadway, New York, NY  10010

Neil G. Gargiulo
Domitilia M. Dos Santos
Ernest Edward Badway, Esq.

# Exhibit E

# NASD Dispute Resolution

# <u>ORDER</u>

**Case Number:** 05-05482

**Case Name:**  REC Capital Markets Corporation v. Brian M. Bittner

**Issues Addressed:** (ie., name of motion or request, by which party)
 Respondent's Motion to Adjourn the Hearing, dated December 13, 2006 

_____

_____

_____

**Pre-Hearing Conference Held?:**          Yes          (No)          (circle one)

Date/Time: 

Participating in the conference were:

Chairperson: _____

Panelist: _____

Panelist: _____

Claimant's Representative: _____

#1 Respondent's Representative: _____

#2 Respondent's Representative: _____

NASD Dispute Resolution Staff: _____

**Decided by:**    Chairperson    (Panel)          (circle one)

**Rulings[1]:**

After considering the pleadings submitted by the parties (and oral arguments, if pre-hearing conference held), the Panel/Chairperson rules as follows:

1.  Respondent's Motion to Adjourn the Hearing is granted. 

---

[1] **If more space is needed, add additional pages.**

2. All fees and assessments related to this adjournment request are assessed against the Respondent.

3. _____

If the parties settle this matter prior to the hearing, the forum fees for this pre-hearing conference (or discovery-related motion decided without a pre-hearing conference) are assessed as follows:

_____ % to Claimant(s), jointly and severally
100 % to Respondent(s), jointly and severally
_____ % assessed to _____
_____ % assessed to _____
_____ % assessed to _____
_____ % assessed to _____

X _____
Chairperson,
On behalf of the Arbitration Panel

Date: December 21, 2006

# Exhibit F

RBC Capital Markets Corp.

~~Royal Bank of Canada~~, Claimant

v.

BRIAN BITTNER,

The parties agree to settle this matter as follows; subject to more formal Documentation:

RD

(1) ~~This Respondent~~ Respondent will pay to Claimant the sum of $390,000.00 as follows:

(a) $75,000 ~~and to~~ no later than ~~the~~ thirty (30) days after the execution of this Stipulation;

(b) $75,000 no later than sixty days after the execution of this stipulation; and

(c) $240,000 in forty-eight (48) equal payments of $5,000.00 Dollars.

(2) In the event of a default in any payment, and the continuation of such default for a period of ten (10) days after written notice to the Respondent, the Claimant shall be entitled to enter judgment for the full balance of the promissory note, to wit, ~~$464,411.59~~ $492,410.59 less any payments theretofore made ~~in four~~

RD
nop

in payment of any sums due hereunder.

(3) ~~Upon pay~~ The ~~p~~ Claimant and Respondent shall execute a general release of ~~Respondt~~ each other, which release shall be held in escrow by Respondent's and Claimant's counsel (with each holding the ~~copy~~ ~~in the delivered~~ ~~and a receipt~~ ~~to Respondent's counsel~~) of the other pending full payment of the sums due hereunder.

(4) Notices shall be sent to the ~~respective~~ parties and their respective counsel by fax and/or overnight mail and by ~~certified~~ certified mail, at addresses/numbers to be designated by the parties in a more formal stipulation.

(5) The Claimant shall issue Form 1099's for the amount by which the claim is reduced, to wit, $102,410.59, shall be divided equally over 4 years so that Respondent receives a Form 1099 in an amount no greater than $25,602.65 in any year.

2/21/07     Ralph De Serio

RALPH DE SERIO
FOR ~~ROYAL BANK OF CANADA~~ RBC Capital Markets Corp.
AND AS
ATTORNEY FOR CLAIMANT

BRIAN BITZNER

CARLOTTA FARFER
ATTORNEY FOR

# Exhibit G

# ALONSO, ANDALKAR & KAHN, P.C.

ATTORNEYS AT LAW
920 BROADWAY
NEW YORK, NEW YORK 10010
(212) 598-5900
WWW.ALONSOLEGAL.COM

MARK J. ALONSO
MANOJ R. ANDALKAR<
JAYMEE KAHN<

JOAN TORO
CATANIA T. FACHER
ERIN MAC AVOY
JASON P. CAPIZZI<
ANDREW S. MURRAY

TELECOPIER      (212) 598-4650
EMAIL: MANDALKAR@ALONSOLEGAL.COM

< MEMBER OF THE NY AND NJ BAR

March 23, 2007

Rachel D. Glasgow, Esq.
NASD Dispute Resolution, Inc.
Northeast Processing Center
Department Of Case Administration
One Liberty Plaza
165 Broadway, 27th Floor
New York, New York 10006
***VIA FACSIMILE 212-858-7455 and CERTIFIED MAIL***

Re.:    *RBC Capital Markets Corporation v. Brian M. Bittner*
        *NASD-DR Case Number 05-05482*

Dear Ms. Glasgow:

This letter represents our firm's formal notice of withdrawal as Respondent Brian Bittner's attorney of record in the above-referenced matter. At this time, we do not know if Mr. Bittner will be retaining substitute counsel. As such, Mr. Bittner contact information is as follows:

Mr. Brian M. Bittner
200 East 10th Street, #905
New York, NY 10003
Telephone # (917) 673-3232

Rachel D. Glasgow, Esq.
March 23, 2007
Page 2 of 2

Please update your records to reflect the change.  Thank you for your time and attention
on this matter.

Very truly yours,

Manoj R. Andalkar

cc:    Ralph DeSena, Esq. *(Via Facsimile, PDF  and Certified Mail)*
        Brian Bittner  *(Via PDF and Certified Mail)*

# Exhibit H

**Award**
**NASD Dispute Resolution**

In the Matter of the Arbitration Between:

RBC Capital Markets Corporation (Claimant) v. Brian M. Bittner (Respondent)

Case Number: 05-05482          Hearing Site: New York, New York

Nature of the Dispute:  Member vs. Associated Person.

## REPRESENTATION OF PARTIES

Claimant RBC Capital Markets Corporation, hereinafter referred to as "Claimant":
Ralph DeSena, Esq., RBC Capital Markets Corportation, New York, NY.

Respondent Brian M. Bittner, hereinafter referred to as "Respondent": Richard B.
Wolf, Attorney at Law, Poughkeepsie, NY.  Previously represented by Catania T.
Facher, Esq., Alonso, Andalker & Kahn, P.C. Previously represented by Eugene
Small, Alonso, Andalker & Kahn, P.C.

## CASE INFORMATION

Statement of Claim filed on or about:  October 26, 2005.
Claimant signed the Uniform Submission Agreement:  October 26, 2005

Statement of Answer filed by Respondent on or about:  January 11, 2006
Respondent signed the Uniform Submission Agreement: January 11, 2006

## CASE SUMMARY

Claimant asserted the following causes of action: balance of the promissory note.

Unless specifically admitted in his Answer, Respondent denied the allegations
made in the Statement of Claim and asserted various affirmative defenses.

In his counterclaim, Respondent asserted the following causes of action:
misrepresentations and creation of a hostile work environment.

## RELIEF REQUESTED

Claimant requested $464,911.59, plus interest at the rate of 3.38% per annum
from June 10, 2005 through the date of the panel's award, costs and expenses of
this proceeding, including reasonable attorneys' fees and NASD fees, and any
further relief as the panel deems just and fair.

Respondent requested that Claimant's claims be dismissed in their entirety.

In his Counterclaim, Respondent requested damages for lost pay in an amount to be determined at the hearing and for mental anguish in the amount of $500,000.00, as well as all costs of this proceeding, including attorneys' fees.

## OTHER ISSUES CONSIDERED AND DECIDED

By letter dated March 12, 2007 NASD Dispute Resolution removed this case from its docket as settled. Subsequently, by e-mail dated March 19, 2007 counsel for Claimant indicated that the parties had not yet finalized the settlement of this matter. Accordingly, this case was administratively re-opened.

On or about April 5, 2007, Claimant filed a Request for an Order Incorporating the Terms of the Settlement Agreement. On or about April 12, 2007, Respondent submitted his Opposition. After due deliberation, the Panel issued an Order dated May 8, 2007 which was served upon the parties on May 9, 2007.

The parties have agreed that the Award in this matter may be executed in counterpart copies or that a handwritten, signed Award may be entered.

## AWARD

After considering the pleadings, the testimony and evidence presented at the hearing, and all submissions regarding Claimant's Motion/Request for an Order Incorporating the Terms of the Settlement Agreement, the Panel has decided in full and final resolution of the issues submitted for determination as follows:

1. Claimant's Motion/Request is granted to the extent that the parties' Settlement Agreement, dated February 21, 2007 [attached as Exhibit 'A'], is hereby enforced as the final resolution of this matter between the parties, and its terms shall begin to run upon service of the Arbitration Panel Order.

2. Respondent's counterclaim is denied in its entirety.

3. Any and all relief not specifically addressed herein is denied.

## FEES

Pursuant to the Code, the following fees are assessed:

### Filing Fees
NASD Dispute Resolution will retain or collect the non-refundable filing fees for each claim:

NASD Dispute Resolution
Arbitration No. 05-05482
<u>Award    Page 3 of 5</u>

|  |  |
|---|---|
| Initial claim filing fee | = $1,000.00 |
| Counterclaim filing fee | = $  300.00 |

## Member Fees

Member fees are assessed to each member firm that is a party in these proceedings or to the member firm that employed the associated person at the time of the events giving rise to the dispute.  Accordingly, RBC Capital Markets Corporation is a party.

|  |  |
|---|---|
| Member surcharge | = $1,700.00 |
| Pre-hearing process fee | = $  750.00 |
| Hearing process fee | = $2,750.00 |

## Adjournment Fees

Adjournments granted during these proceedings for which fees were assessed:

|  |  |
|---|---|
| December 19 and 20, 2006 adjournment by Respondent | =$1,125.00 |

## Three-Day Cancellation Fees

Fees apply when a hearing on the merits is postponed or settled within three business days before the start of a scheduled hearing session:

February 23, 2007 settlement by the parties

|  |  |
|---|---|
| Claimant's share | = $  150.00 |
| Respondent's share | = $  150.00 |

## Forum Fees and Assessments

The Panel has assessed forum fees for each session conducted or each decision rendered on a discovery-related motion on the papers.  A session is any meeting between the parties and the arbitrators, including a pre-hearing conference with the arbitrators, that lasts four (4) hours or less.  Fees associated with these proceedings are:

| | | |
|---|---|---|
| One (1) Pre-hearing session with a single arbitrator @ $450.00 | | = $  450.00 |
| Pre-hearing conference:    December 21, 2006 | 1 session | |
| | | |
| Two (2) Pre-hearing session with Panel @ $2,250.00 | | = $2,250.00 |
| Pre-hearing conferences:  September 11, 2006 | 1 session | |
| May 7, 2007 | 1 session | |
| | | |
| One (1) Hearing sessions @ $1,125.00 | | = $1,125.00 |
| <u>Hearing Date:        February 21, 2007</u> | <u>1 session</u> | |
| Total Forum Fees | | = $3,825.00 |

1.  The Panel has assessed $1,912.50 of the forum fees against Claimant.

NASD Dispute Resolution
Arbitration No. 05-05482
<u>Award    Page 4 of 5</u>

2.  The Panel has assessed $1,912.50 of the forum fees against Respondent.

**<u>Administrative Costs</u>**
Administrative costs are expenses incurred due to a request by a party for
special services beyond the normal administrative services.  These include, but
not limited to, additional copies of arbitrator awards, copies of audio transcripts,
retrieval of documents from archives, interpreters, and security.

1.  Administrative costs for Respondent              = $    15.00

<h3 align="center"><u>Fee Summary</u></h3>

1.  Claimant is solely liable for:

| | |
|---|---|
| Initial Filing Fee | = $1,000.00 |
| Member Fees | = $5,200.00 |
| Three Day Cancellation Fee | = $   150.00 |
| Forum Fees | = $1,912.50 |
| Total Fees | = $8,262.50 |
| Less payments | = $7,325.00 |
| Balance Due NASD Dispute Resolution | = $   937.50 |

2.  Respondent is solely liable for:

| | |
|---|---|
| Filing Fee | = $   300.00 |
| Adjournment Fee | = $1,125.00 |
| Three Day Cancellation Fee | = $   150.00 |
| Forum Fees | = $1,912.50 |
| Administrative Costs | = $    15.00 |
| Total Fees | = $3,502.50 |
| Less payments | = $     0.00 |
| Balance Due NASD Dispute Resolution | = $3,502.50 |

---

All balances are payable to NASD Dispute Resolution and are due upon receipt
pursuant to Rule 10330(g) of the Code.

NASD Dispute Resolution
Arbitration No. 05-05482
Award   Page 5 of 5

## ARBITRATION PANEL

Ernest Edward Badway, Esq.      - Non-Public Arbitrator, Presiding Chairperson
Domitilia M. Dos Santos         - Non-Public Arbitrator
Neil G. Gargiulo                - Non-Public Arbitrator

## Concurring Arbitrators' Signatures

I, the undersigned arbitrator, do hereby affirm, pursuant to Article 7507 of the Civil Practice Law and Rules, that I am the individual described herein and who executed this instrument is which is my award.

_____        _May 15, 2007_____
Ernest Edward Badway, Esq.                Signature Date
Non-Public Arbitrator, Presiding Chairperson


_____        _____
Domitilia M. Dos Santos                   Signature Date
Non-Public Arbitrator


_____        _____
Neil G. Gargiulo                          Signature Date
Non-Public Arbitrator


      _May 17, 2007_____
Date of Service  (For NASD Dispute Resolution use only)

NASD Dispute Resolution
Arbitration No. 05-05482
Award    Page 5 of 5

## ARBITRATION PANEL

Ernest Edward Badway, Esq.    - Non-Public Arbitrator, Presiding Chairperson
Domitilia M. Dos Santos       - Non-Public Arbitrator
Neil G. Gargiulo              - Non-Public Arbitrator

## Concurring Arbitrators' Signatures

I, the undersigned arbitrator, do hereby affirm, pursuant to Article 7507 of the
Civil Practice Law and Rules, that I am the individual described herein and who
executed this instrument is which is my award.


_____
Ernest Edward Badway, Esq.          _____
Non-Public Arbitrator, Presiding Chairperson    Signature Date


_____          _____
Domitilia M. Dos Santos              Signature Date
Non-Public Arbitrator


_____          _____
Neil G. Gargiulo                     Signature Date
Non-Public Arbitrator


_____ May 17, 2007 _____
Date of Service  (For NASD Dispute Resolution use only)

NASD Dispute Resolution
Arbitration No. 05-05482
Award    Page 5 of 5

### ARBITRATION PANEL

Ernest Edward Badway, Esq.    - Non-Public Arbitrator, Presiding Chairperson
Domitilia M. Dos Santos    - Non-Public Arbitrator
Neil G. Gargiulo    - Non-Public Arbitrator

### Concurring Arbitrators' Signatures

I, the undersigned arbitrator, do hereby affirm, pursuant to Article 7507 of the
Civil Practice Law and Rules, that I am the individual described herein and who
executed this instrument is which is my award.


_____          _____
Ernest Edward Badway, Esq.                Signature Date
Non-Public Arbitrator, Presiding Chairperson



_____          _____
Domitilia M. Dos Santos                   Signature Date
Non-Public Arbitrator


_____          ___5-16-07_____
Neil G. Gargiulo                          Signature Date
Non-Public Arbitrator


_____May 17, 2007_____
Date of Service  (For NASD Dispute Resolution use only)

# EXHIBIT A

RBC Capital Markets Corp.

~~Ross Ryan as CHASA~~, Claimant

v.

BRIAN BITTNER,

The parties agree to settle this matter as follows; subject to more formal Documentation

① ~~This matter does~~ Respondent will pay to Claimant the sum of $390,000.00 as follows:

    (a) $75,000 ~~and~~ no later than ~~a~~ thirty (30) days after the execution of this Stipulation;

    (b) $75,000 no later than sixty days after the execution of this stipulation; and

    (c) $240,000 in forty-eight (48) equal payments of $5,000.00 Dollars.

② In the event of a default in any payment, and the continuation of such default for a period of ten (10) days after written notice to the Respondent, the Claimant shall be entitled to enter judgment for the full balance of the promissory note, to wit, the ~~$464,414.59~~ $492,410.59 less any payments theretofore made ~~in favor~~

Exhibit B

in payment of any sums due hereunder.

(3) The Claimant and Respondent shall execute a general release of each other, which release shall be held in escrow by Respondent's and Claimant's counsel with each holding a copy of the other pending full payment of the sums due hereunder.

(4) Notices shall be sent to the parties and their respective counsel by fax and/or overnight mail at by certified mail, at addresses/numbers to be designated by the parties in a more formal stipulation.

(5) The Claimant shall issue Form 1099's for the amount by which the claim is reduced, to wit, $102,410.59, shall be divided equally over 4 years so that Respondent receives a Form 1099 in an amount no greater than $25,602.65 in any year.

2/21/07   _Ralph De Sena_

RALPH De SENA
FOR RBC Capital Markets Corp.
AND AS
ATTORNEY FOR CLAIMANT

BRIAN BITTNER

CYNTHIA FISCHER
ATTORNEY FOR