UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------
BRIAN M. BITTNER,

                    Petitioner,

                                      No. 07 CIV. 7154 (PAC)

     v.

RBC  CAPITAL MARKETS CORPORATION,

                    Respondent.
--------------------------------------------------------------------

## PETITIONER'S MEMORANDUM OF LAW IN OPPOSITION
## TO RESPONDENT'S MOTION TO DISMISS

### PRELIMINARY STATEMENT

Respondent's Motion to Dismiss raises two principal questions:  (1) Whether the Petition presents a substantial federal law question so as to invoke federal court jurisdiction; (2) If federal court jurisdiction exists, as Petitioner contends, whether the arbitration award should be vacated because it is contrary to controlling federal common law principles of contract law brought to the arbitrators' attention.

Jurisdiction clearly exists under the standards discussed by the Court of Appeals in Greenberg v. Bear, Stearns & Co., 220 F. 3d 22, 27 (2d Cir. 2000):

> "Where the arbitrator's alleged manifest disregard of federal law forms a key part of the petitioner's complaint about the award, the federal questions thereby presented are substantial enough to support federal jurisdiction."

Allegations of such disregard of federal contract law principles appear at

Paragraph 25, 31, 26 of the Petitioner and at pages 5 – 9 of Petitioner's Memorandum

of Law accompanying the Petition where the arbitrators are alleged to have made the

February 21, 2007 stipulation a binding enforceable contract contrary to law.  The

Supreme Court earlier stated the controlling principle that for federal court jurisdiction

to exist, "there must be diversity of citizenship <u>or some other independent basis</u> for

federal jurisdiction ...." <u>Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.</u>, 460

U.S. 1, 25-26, note 32 ("Cone" misspelled as "Cohen" in Respondent's Memorandum

of Law at ii, 8).   Emphasis added.

The independent basis for federal jurisdiction in the present case is unlawfully

enforcing a non-binding conditional stipulation as a binding contract, contrary to

federal contract law.  The fundamental jurisdiction issue is not a difficult one in this

case.  Jurisdiction exists under the guidelines discussed in <u>Greenberg</u> which

Respondent has either misunderstood or failed to apply.

On the merits, once jurisdiction is found, Respondent failed to discuss or apply

the contract formation standards set forth in the controlling Second Circuit  <u>Winston</u>

<u>v. Mediafare Entertainment Corporation</u>, 777 F.2d 278 (2d Cir. 1985), and <u>Ciaramella</u>

<u>v. Reader's Digest Association, Inc.</u>, 131 F.3d 320 (2d Cir. 1997) decisions on federal

contract formation law and related federal cases, cited therein.  These two leading

Second Circuit decisions clearly indicate that the award enforcing a February 27, 2007

"stipulation", where the stipulation was expressly conditioned on "further documentation", as a binding agreement is contrary to controlling federal contract law.

The arbitrators failed to make any factual findings and did not discuss any issue to support their award.

Because Respondent's Motion to Dismiss fails on the facts and the law, it should be denied.

## FACTS

The facts for purposes of this motion to dismiss are as alleged in the Petition and exhibits, they are summarized as follows.

Petitioner Brian Bittner ("Petitioner" or "Bittner") was employed as a financial consultant by RBC Dain Rauscher, a separate corporation from RBC Capital Markets Group and unaffiliated with Respondent RBC Capital Markets.[1]   Petitioner's Dain Rauscher employment ran from January 31, 2003 to October 29, 2004.  Thereafter, Petitioner began his employment with Respondent RBC Capital Markets ("Respondent" or "RBC") as a salesperson-director beginning November 1, 2004 and ending June 2005, when Petitioner resigned because of Respondent's fraudulent and intentional failure to meet important contractual commitments to Petitioner.

---

[1]  Both corporations are part of the "RBC Financial Group".  See note 1 to the October 29, 2004 employment agreement, Petition Exhibit F.  Each company has different corporate purposes for the Royal Bank of Canada.

When Petitioner began his employment with RBC Dain Rauscher in January 2003, Petitioner signed a forgivable promissory note payable to RBC Dain Rauscher. By their terms, the note and the 2003 Employment Agreement were to be construed pursuant to Minnesota law.  The subsequent 2004 Employment Agreement with Respondent was stated to be governed by New York law.

The note and employment contracts contained provisions that stated the unpaid balance of the Promissory Note would become due upon termination of Petitioner's employment.  After his forced resignation in June 2005 from RBC, Respondent brought its claim in arbitration for the alleged unpaid sum due on the note.  Petitioner raised various defenses and a counterclaim, which if successful, would have cancelled any balance due on the note and provided damages to Petitioner.

Prior to the arbitration hearing before a panel of three arbitrators (two of  whom were lawyers) in February 2007, Petitioner and Respondent signed a hand-written two-page "stipulation" on February 21, 2007. The stipulation stated at its outset that "The parties agree to settle this matter as follows subject to more formal documentation".  Stipulation, Petition, Exhibit B.  Emphasis added.

The stipulation set forth certain payment dates in Paragraph 1.  But in Paragraph 1(c), for example, a stated payment of $240,000 in forty-eight (48) equal payment of $5,000.00 had no payment dates for this amount. Paragraph 5 of the

stipulation also set forth certain tax consequences relating to tax Form 1099, favorable to Petitioner.

The February 21 stipulation did not specifically refer to the resolution of Petitioner's defenses and counterclaim, or the terms of any proposed release, or the language of any confession of judgment. The February 21, 2007 stipulation was untitled and not stated to be a "Settlement Agreement". That title was inserted only later by the arbitrators for the first time in their award.

After February 21, 2007 and for the ensuing weeks, the attorneys for Respondent RBC and Petitioner continued to negotiate the terms of a proposed final settlement of the claim. Petitioner throughout was not informed of the substance of the lawyers' negotiations and took no part in them. Eventually, in March 2007, Petitioner was presented with a detailed 8-page "Settlement Agreement and Release" and "Confession of Judgment". Petition, Exhibit A. Petitioner reviewed the documents, disagreed with their terms and refused to execute them. Petition, Paragraphs 19 – 22.

On April 5, 2007, Respondent filed a motion with the arbitrators requesting the panel to issue an order enforcing the entire 8-page newly-drafted Settlement Agreement, Release and Confession of Judgment to be signed by Petitioner. Respondent at no time sought to enforce the February 21 stipulation separately.

Petitioner opposed the motion in his memorandum to the arbitrators on April 12, 2007, principally on the ground that no settlement agreement was lawfully reached on February 21 because of the conditional language and that other matters needed to be resolved. He requested a brief extension of time for his new attorney to fully familiarize himself with the case and pleadings.

On May 7, 2007, the arbitration panel held a telephone conference on Respondent's motion request to enforce the 8 pages of settlement documents, and, in opposition, Petitioner's argument that the February 21 stipulation could not be enforced as a binding agreement under law because it was incomplete and tentative. The arbitrators also set hearing dates if RBC's motion was denied.

The next day, on May 8, 2007, the arbitrators issued a decision granting Respondent's motion "to the extent that the parties' Settlement Agreement, dated February 21, 2007, is hereby enforced as the final resolution of the matters between the parties ..." Petition Exhibit D and Petition, Paragraph 29. The Panel concluded its May 8 order by stating that "This matter is now closed."

A week after the arbitration was closed, and without notice or request, the Panel issued an altered award on May 15 – 16 adding that Bittner's counterclaim was denied in its entirety and that "[a]ny and all relief not specifically addressed is denied." Petition, Exhibit E.

On August 3, 2007, Bittner petitioned to vacate the award, with his accompanying Memorandum of Law.  Respondent RBC moved to dismiss the Petition for failure to state a claim on September 10, 2007.

For purposes of Respondent's Rule 12(b)(6) Motion to Dismiss, the facts are fully set forth in the Petition and annexed exhibits.


## DISCUSSION

## I.  THE STANDARDS GOVERNING RESPONDENT'S MOTION TO DISMISS ARE SETTLED

Respondent's Motion to Dismiss under Rule 12(b)(6), Fed. R. Civ. P., is to be assessed under settled standards in this Circuit.  The Petition must be construed "liberally, accepting all factual allegations in the [Petition] as true, and drawing all reasonable inferences in the [Petitioner's] favor."  Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).  "Dismissal is inappropriate unless it appears beyond doubt that the [Petitioner] can prove no set of facts which would entitle him or her to relief.  Id. Material outside of the Petition is to be excluded.  If it is not, the Motion is to be converted with notice by the Court to one for summary judgment under Rule 56.[2]

---

[2] In the present case, the panel did not take any testimony or hold a hearing, nor did the panel issue findings or give any reasons for its award.

## II.  THE PETITION RAISES A SUFFICIENTLY SUBSTANTIAL FEDERAL QUESTION TO ESTABLISH THIS COURT'S SUBJECT MATTER JURISDICTION

Petitioner has set forth an independent basis for federal court jurisdiction in this case  by alleging the fundamental federal common law principle of contract law that no final settlement agreement binding the parties occurred until "further documentation" was to be negotiated and provided to Petitioner for signature.  Federal common law of contract on the point of when a binding agreement is formed (federal law is the same as New York contract law on contract formation) is the substantial federal question raised by Petitioner in his Petition and in principle previously asserted to the arbitrators in Petitioner's Memorandum opposing enforcement of the February 21, 2007 stipulation (e.g., at unnumbered pp. 2-3), and in the May 7, 2007 telephone conference with the arbitrators.  See, e.g., Petition, paragraphs 18-26, 31, 33 and 36, Memorandum of Law to Arbitrators, as follows:

> 18.  On February 21, 2007, prior to the arbitration hearing, RBC and Petitioner signed a two page, partially crossed out, untitled handwritten memorandum, <u>limited in scope, conditional and not final or binding.  That February 21 memorandum expressly stated the parties' intent that it was to be "subject to more formal documentation."</u>

> 19.  After February 21, 2007, the parties' attorneys <u>continued to negotiate the  "more formal" settlement agreement</u> by, upon information and belief, exchanging various drafts and engaging in oral discussions between the attorneys <u>on the Settlement Agreement's proposed terms</u>.  Petitioner was not informed of the substantive terms of the attorney's negotiations as they evolved.

20.  In or about March 2007, Petitioner was presented with an 8 page Agreement, labeled as a proposed "Settlement Agreement and Release" and "Confession of Judgment".  These documents substantially expanded on and expressly superseded  the two page handwritten February 21, 2007 memorandum.  Petitioner reviewed and evaluated these documents and disagreed with their terms and refused to sign them.

21.   Petitioner's then counsel resigned from representing Petitioner after he declined to sign the Settlement Agreement and Release and Confession of Judgment presented to him in March 2007.  Petitioner subsequently obtained substitute counsel, his present attorney herein.

22.  The March 2007 Settlement Agreement and Release and Confession of Judgment were the only documents containing the parties' settlement terms.  By express language in this Settlement Agreement, it fully extinguished  and superseded the terms of the February 21, 2007 memorandum so that the February 21 memorandum no longer legally existed.

23.  On or about April 5, 2007, RBC filed a pre-hearing motion with the Arbitrators for an order "that incorporates the terms of the [8 page] Settlement Agreement and Release and requires Respondent [Petitioner Bittner] to execute the Confession of Judgment attached [to the March 2007 Settlement Agreement]" and presumably directing Petitioner to sign the full eight page Settlement Agreement and Release or, in the alternative,  for a prompt hearing on the merits.  Exhibit H to the Petition.  The February 21, 2007 memorandum was not submitted by RBC with RBC's motion. Only the eight page Settlement Agreement and Release and Confession of Judgment was presented which were the sole subject of the motion.

24.  Petitioner opposed RBC's request on the ground that no Agreement was reached by the parties on the eight page new Settlement Agreement and Petitioner never signed it.  Petitioner however agreed with RBC that a prompt hearing on the merits of the claim, defenses and counterclaim should be held.  Thus,

at no time did RBC ask the arbitrators to separately enforce the two page February 21, 2007 handwritten memorandum, <u>the terms of which the parties specifically stated they intended to be "subject to more formal documentation"</u>.    Exhibit I to the Petition.

25.    Petitioner's opposition to the  RBC motion to require Petitioner to was based on the grounds that the February 21, 2007 memorandum <u>was not intended to be final</u> (the parties stated these terms were "subject to more formal documentation"); and by the terms of the March Settlement Agreement which, for example, the parties were to <u>review and evaluate</u> before executing them and that "any earlier agreement" was superseded.

26.    The eight page Settlement Agreement which was to be enforced in its entirety as requested in RBC's April 5, 2007 motion, included after the last "Whereas" clause the statement that "NOW, THEREFORE, for and <u>in consideration of the mutual covenants contained herein</u>, and other good and valuable consideration, the sufficiency of which is hereby acknowledged, Bittner and RBCCM agree as follows:". (Emphasis added) This clause in March 2007 Settlement Agreement further indicated RBC's and Petitioner's intent that the "mutual covenants" referred to in the proposed eight page agreement − including the $390,000 amount Petitioner would pay was subject to "mutual" interdependent promises to be performed by the parties once the March 2007 Agreement was reviewed and signed.

31.    <u>RBC's proposed eight page agreement by its terms "superseded" the February 21, 2007 two page memorandum in its entirety,  and constituted the "more formal documentation" which the February 21, 2007 memorandum was "subject to") as the parties intended.  Once signed, it was the only agreement which could be enforced in its entirety</u>.

33.  In making its May 8, 2007 award, the Panel engaged in misconduct by basing its decisions <u>on a legally superseded and non-existent memorandum</u>.

10

36.    In making its May 8, 2007 award, <u>the Panel acted in manifest disregard of law by relying on a superseded extinguished February 21, 2007 memorandum, the legal deficiency of which was pointed out to the Panel.</u>

Emphasis added in each of the above paragraphs.

Reading these Petition paragraphs together and in their totality and drawing all inferences in Petitioner's favor, as must be done, it is clear that "the arbitrators' alleged manifest disregard of federal law [i.e., when a binding agreement is formed] form[ed] a key part of petitioner's complaint about the award [and] the federal questions thereby presented are substantial enough to support federal jurisdiction." <u>Greenberg v. Bear, Stearns & Co.</u>, 220 F.3d 22, 26 (2d Cir. 2000).  <u>Ciaramella v. Reader's Digest Association, Inc.</u> 131 F.3d 320, 322 - 323 (2d Cir. 1997).  Petitioner as a matter of law has presented a federal jurisdiction question.

As noted in <u>Greenberg</u>, supra, federal jurisdiction lies "if the ultimate dispositions of the matter by the federal court 'necessarily depends on resolution of a substantial question of federal law'" [citation omitted].  Had the arbitrators applied the principles of federal law of when an agreement becomes binding, the February 21, 2007 "stipulation" could not be enforced or deemed "the final resolution of this matter between the parties. ..."  Petition, Exhibit D, as the arbitrators erroneously and irrationally held.

Petitioner raised this federal common law issue principally and in good faith to the Panel in the telephone conference on May 7, 2007, his prior Opposition Memorandum and in his Petition and supporting Memorandum here. He thereby adequately presented a substantial federal question providing this Court with jurisdiction. <u>Greenberg v. Bear, Stearns & Co.</u>, supra at 27.[3]

Respondent misunderstands the Court of Appeals' jurisdictional discussion in <u>Greenberg</u>. RBC argues that because the Petition includes <u>some</u> allegations perhaps relating to the arbitration <u>process</u> itself, the other manifest disregard of federal law claim falls by the wayside. No such language or intent is found in <u>Greenberg</u> or in any other Second Circuit case. Respondent's assertion of a "numbers game" in parsing the Petition is erroneous and a misreading of <u>Greenberg</u>.

Greenberg states that in determining federal question jurisdiction, a reviewing court "must make principled, pragmatic distinctions, engaging in a selective process which picks the substantial causes out of the web and lays the other ones aside." <u>Greenberg</u>, at 26 [case citation omitted]. Making those distinctions in the Petition

---

[3] Respondent erects form over substance by arguing that specific <u>cases</u> had to be cited to the arbitrators in order to apprise them of the federal law. Petitioner argued to the panel in his Opposition Memorandum and in the May 7 telephone conference that no binding contract resolving the issues was formed by the February 21 stipulation, because of its conditional open-ended nature and the subsequent major documents negotiated by the parties, and was the principle of law which should have alerted the arbitrators to the proper result, as a matter of contract law. This was particularly so since the Panel chair and another arbitrator, as lawyers, should not have ignored this basic principle of when a binding agreement is formed.

clearly reveals the existence of the substantial federal common law contract principles asserted by Petitioner, as Petitioner has discussed.

Greenberg, accordingly, strongly supports the existence of Petitioner's federal jurisdictional claims in this case.   The Court stated that courts are to examine the nature of the federal question raised in the Petition.  No specific "form" language as Respondent appear to argue, is required to be set forth by the  party in his or her allegations seeking to vacate the award on federal court jurisdiction grounds.  It  is those grounds reasonably set forth in a fairly read petition or complaint that counts and exist here.  The district court is to engage in "pick[ing] the substantial causes out of the web" for further review on the merits. The reviewing court does not have to find federal court jurisdiction in  every claim which may have been alleged in order to find that federal court jurisdiction is a key element alleged in the Petition.[4]

It is well-established that federal contract law is a part of the federal common law. Thus, failing to follow it raises a substantial question.   Winston v. Mediafare Entertainment Corporation, 777 F.2d 78 (2d Cir. 1985), and Ciaramella v. Reader's Digest Association, Inc., 131 F.3d 320 (2d Cir. 1997).  Petitioner has alleged  in his Petition that the February 21 stipulation was not a final and binding agreement because a binding contract for such purposes was not formed therein.  This claim of

---

[4] Respondent's assertion that the Petition does not allege federal subject matter jurisdiction under Hakala v. Deutsche Bank, 2000 U.S. Dist. LEXIS 14016 (SDNY 2000) is frivolous.  (Petition dismissed without prejudice).  In Hakala, unlike the present cases, Petitioner failed to assert manifest disregard federal law.

failure to bind requires an analysis of the underlying federal law of contract formation to resolve Petitioner's contention.  The arbitrators never undertook this required task of discerning intention, explicitly or implicitly.

As the Greenberg court noted, federal jurisdiction lies where the issue of finding the nature of the February 21 stipulation is dependent upon resolving the federal common law question of contract formation.  The claim that the arbitrators ignored the common federal common law is unquestionably a "key part" of the Petition.

Petitioner of course does not dispute the general principle of limited review of arbitration awards.  But it is equally clear  from Greenberg that "the federal courts have a strong interest  in ensuring that arbitrators interpret and apply federal law properly [here federal contract law] ...."  Id. at 27.  The Panel manifestly disregarded that federal common law here and, as in Greenberg, "a federal question is plainly presented."  Id. at 28.

## III.    THE AWARD SHOULD BE VACATED ON THE MERITS UNDER THE LEADING SECOND CIRCUIT CASES DISCUSSING FEDERAL COMMON LAW CONTRACT PRINCIPLES

Under federal contract law, the parties' conduct – in particular that of Respondent – indicates that the parties did not intend to be bound by the February 21, 2007 "stipulation" until subsequent documents were developed and approved.

First, the stipulation itself is expressly limited by the conditional "subject to" phrase appearing on its first line: "<u>subject to more formal documentation</u>" (Emphasis added).[5]  The meaning of that sentence is that the parties intended any settlement will have additional  formal documents as part of any binding agreement.  This intent was further borne out, for example, by Respondent's admission, in its September 10, 2007 Memorandum of Law on the present motion, that counsel embarked upon negotiating language ("exchanging drafts") to address their concerns after February 21. Respondent's Memorandum of Law, pp. 5-6.   There was no ambiguity arising from the "subject to" phrase as to the parties' intention in light of the new 8 pages of documents eventually presented to Petitioner for his signature.  These were the documents intended to bind, not the February 21 stipulation.

Certainly, Respondent RBC knew that "subject to more formal documentation" meant future negotiation of these agreements and surely Respondent on February 21, 2007 intended to add the onerous Release terms as part of the "further documentation" along with the terms and waivers inserted in the "Confession of Judgment", e.g., page 8 of Exhibit A to the Petition.  The proposed amplified "Settlement Agreement" entirely omitted Paragraph (5) of the February 21 stipulation relating to advantageous

---

[5] The February 21, 2007 stipulation in its original handwritten form is set forth as Exhibit B to the Petition.   Respondent's typewritten rendition, inserted at page 4 of its present Memorandum, is not accurate in several respects.  First, Respondent inserted the suggestive description term "The Settlement Agreement states ..." when the parties never provided this or any other title in the original the February 21 stipulation; the several scratch outs in the original are necessarily omitted, which were sometimes initialed, sometimes not; title for Line 1 (a) should read "execution" not "executor", Line 2, paragraph 4 should read "addresses/ numbers", not "addressor/number".

tax matters to Petitioner covered by Form 1099.  But the arbitrators enforced the

February 21 stipulation in its entirety notwithstanding the lawyers' exclusion of its

Paragraph 5.[6]

   All of these "more formal documentation" matters, anticipated by the parties in

the February 21, 2007 conditional stipulation, were critical items to which Petitioner

himself never agreed and in fact was never aware of on February 21 or thereafter until

presented to him in the 8 pages of new documents.

   Respondent now makes the ludicrous claim that the parties merely meant by the

conditional "subject to more formal documentation" language only that a

"typewritten" document would replace the 2-page handwritten February 21

Stipulation.[7]  By its own hand, Respondent's additional 8 pages of terms shows that

there was far less than  a meeting of  the minds between Petitioner and Respondent as

to the terms of a final "Settlement Agreement" on February 21, or thereafter.

   The time at which the Respondent and Petitioner intended to be bound on the

terms of any settlement agreement "is a question of  fact, to be determined by

examination of the totality of the circumstances." Ciaramella v. Reader's Digest

---

[6] Either the arbitrators ignored the deletion or forgot about it.

[7] Respondent's statement that "the parties were close to signing the agreement" has no support in the record and is improperly asserted.  Petitioner had not even seen it.  Further, RBC's remark that Petitioner "fired his attorneys" in March is also improper, inaccurate and irrelevant, and presumably stated to attempt to place Petitioner in a negative light to this Court.  Respondent and its council presumably were not privy to the arrangements and conversations between Petitioner and his former attorney.  Respondent also engaged in improper and false accusations against Petitioner to the arbitrators.  See, Petition, Exhibit I, signature page. e.g., Petitioner allegedly "concocted" his mother's cancer treatment.  These personal false attacks have no proper place in this case.

Association, Inc., Id. at 322; It is the critical question of federal common law of contract formation presented in this case which was totally ignored by the arbitrators (notwithstanding that two of the three arbitrators were lawyers and should have understood the basic contract principles asserted to them by Petitioner).[8]

Petitioner does not disagree with the standards of review for an award. In this case, however, vacating the award is required because of one reason, there is no colorable basis for it. Compare Westerbeke, supra at 212n8; Wallace v. Buttar, 378 F.2d 182 (2d Cir. 2004). (3 Day Hearing where Panel weighed evidence)

The term "Settlement Agreement" was inserted solely by the arbitrators as the title to the February 21 stipulation to boost its erroneous conclusion. The parties themselves never used that descriptive term as a title label for the stipulation. This was because the parties and their attorneys knew more terms were required to be discussed and resolved before a binding settlement agreement could occur.

## IV.  THE FEBRUARY 21, 2007 STIPULATION WAS NOT A BINDING AGREEMENT UNDER THE SECOND CIRCUIT'S WINSTON AND CIARAMELLA DECISIONS

The Arbitration Panel entered an Order on May 8, 2007 that "the parties Settlement Agreement, dated February 21, 2007 is hereby enforced as the final

---

[8] "A legal principle clearly governs the resolution of an issue before the arbitrator if its applicability is obvious and capable of being readily and instantaneously perceived by the average person qualified to serve as an arbitrator." Westerbeke v. Daihatsu Motor Co., Ltd. 304 F.3d 200 (31 days of hearing). Banco de Seguros del Estado v. Mutual Marine Office, Inc., 344 F.3d 255, 263 (2d Cir 2002)

resolution of this matter [sic] between the parties", and closed the arbitration. Petition, Exhibit D.  It was not free to do so under the federal common law discussed in Ciaramella and Winston.

The fundamental principle guiding all the decisions cited in Ciaramella and Winston, discussing when an agreement becomes binding, is that "it is the intent of the parties that will determine the time of contract formation." Winston v. Mediafare Entertainment Corporation, 777 F.2d 78, 80 (2d Cir. 1985).  "Intent" varies with the facts of every given case.

In Horphag Research Limited v. Hankel, 115 F. Supp. 2d 455, 457 (S.D.N.Y. 2000), the Court denied a motion for specific enforcement of an alleged settlement. The same Winston analysis on finality of oral arguments was made in Horphag relating to an asserted written letter settlement agreement.

The Horphag District Court decision endorsed the first factor of Winston – an express reservation of the right not to be bound in the absence of a writing.  In the present case, both RBC Capital Markets and Bittner made an express  reservation by the conditional "subject to more formal documentation" language.  Plainly, that "subject to" further documentation reservation was intended to include future writings of terms, as in fact occurred here.

The second Winston factor, whether there has been partial performance of the contract, simply did not happen and needs no further discussion.

The third factor, whether all of the alleged contract terms were agreed upon in the February 21 stipulation  did not occur, as witnessed by the eventual presentation of the terms in the new 8-page Agreement and Release and Confession of Judgment proposed to Petitioner a month later in March 2007.  Finally, the fourth factor, whether the agreement is the type of contract usually committed to writing, is, in fact, the case here and is shown by the 8-page Settlement Agreement, Release and Confession of Judgment embodying new and more fully stated terms of settlement.[9]

The early payment schedules and related terms of timing criticized by the Court of Appeals in Winston, which formed another basis for not finding a preliminary agreement to be binding in that case, also appears in the present case.  This Paragraph (1)(c) in the February 21 handwritten stipulation states that "$240,000 [will be paid] in forty-eight (48) equal payments of $5,000.00"  However, the stipulation omits any reference as to when such payments are to be made. This confusion about and omission of key payment dates in the February 21 stipulation borne out by the later insertion of specific timing and place of payment set forth in paragraph 1 of the "Settlement Agreement and Release" presented  to Petitioner for approval and signature weeks later in March 2007.  Petition, Exhibit A.

---

[9] The February 21  stipulation was no more than "an agreement to agree to the amplified terms of a future writing". Matter of Dolgin Eldert Corp., 31 NY2d 1, 11 (1972); Silverman v. Member Brokerage Services, 298 AD 2d 381 (2d Dept. 2002). (payments are not due until a "more formalized" agreement was executed.)

The principle that if a colorable basis for the award can be discerned, the award may survive does not apply here. Here, it is logically impossible for the February 21 award to be a "final resolution" of the parties' claims since the new proposed "Settlement Agreement", "Release" and "Confession of Judgment" raised new issues not contemplated by the February 21 stipulation and could not be resolved by it. The May 8 award did not reach Petitioner's offsetting claims and the February 21 stipulation avoided mentioning Petitioner's defenses and counterclaims altogether. Cf. Westerbeke v. Daihatsa, supra, 212 at p. 8. Banco de Seguros Estado v. Mutual Marine Office, 344 F.3d 255 (2d Cir. 2003).

In sum, the same holding rejecting any binding nature of the preliminary agreement in Winston applies in the present case: "{T]he parties never entered into a binding settlement agreement [on February 21, 2007]. [This] conclusion is supported by the writings and acts of the parties, by the language of the drafts of the Agreement and by the nature of the agreement itself. Accordingly, the [award] enforcing the alleged settlement must be [vacated]..." Winston, 777 F.2d at 83.

## CONCLUSION

A substantial question of federal law was raised by Petitioner providing this Court with jurisdiction to decide the merits of the Petition. On the merits, Petitioner has shown that the arbitrators manifestly disregarded controlling federal contract law,

under all the circumstances, by directing enforcement of a non-binding stipulation not intended to be a "final resolution" of the dispute.  Respondent's Motion to Dismiss therefore should be denied.[10]  The award should be vacated and this case remanded for a hearing before a new panel.

Dated: September 24, 2007                                _____/s/_____

                                                         RICHARD B. WOLF RW4666
                                                         Attorney for Plaintiff
                                                         510 Haight Avenue
                                                         Poughkeepsie, NY 12603
                                                         (845) 454-1200

---

[10] Petitioner has the right, if the motion is granted on jurisdictional grounds to amend the Petition since no responsive pleading has been served by RBC.